BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
JEANETTE E. MCPHERSON, ESQ.
Nevada Bar No. 5423
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
      jmcpherson@foxrothschild.com
      nkoffroth@foxrothschild.com
      zwilliams@foxrothschild.com
*Counsel for Debtor Cash Cloud Inc.*

JAMES J. JIMMERSON, ESQ.
Nevada Bar No. 000264
JAMES M. JIMMERSON, ESQ.
Nevada Bar No. 12599
**THE JIMMERSON LAW FIRM, P.C.**
415 South 6th Street, Suite 100
Las Vegas, Nevada 89101
Telephone:    (702) 388-7171
Facsimile:    (702) 380-6413
Email: jimmerson@jimmersonlawfirm.com
      jmj@jimmersonlawfirm.com

*[Proposed] Counsel for Debtor*
*Cash Cloud Inc.*

Electronically Filed March 10, 2023

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Bankruptcy Case No. Case No. 23-10423 |
| CASH CLOUD, INC., | Chapter 11 |
| dba COIN CLOUD | |
| Debtor. | Adv. Case No. |
| | **COMPLAINT** |
| | Hearing Date: |
| | Hearing Time: |

142908162.3

CASH CLOUD, INC., dba COIN CLOUD,

Plaintiff,

v.

Lux Vending, LLC d/b/a Bitcoin Depot,

Defendant.

Cash Cloud, Inc. d/b/a Coin Cloud ("Cash Cloud," "Plaintiff," or "Debtor"), debtor and debtor-in-possession in the above-captioned Chapter 11 case (the "Chapter 11 Case"), by and through its proposed undersigned counsel, Fox Rothschild LLP, and The Jimmerson Law Firm, P.C., hereby files this Complaint and complains as follows.

## JURISDICTION AND VENUE

1.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2.   This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

3.   Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.   The procedural grounds for the relief requested herein is Fed. R. Bankr. P. 7001.

5.   Pursuant to Fed. R. Bankr. P. 7008 and Local Rule 7008, Cash Cloud consents to the entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

6.   Cash Cloud reserves its rights to amend this Complaint as additional facts may be discovered.

## PARTIES

7.   Plaintiff is the debtor and debtor-in-possession in the above-captioned Chapter 11 Case.  Cash Cloud is a Nevada corporation, duly formed under the laws of the State of Nevada. At all times since its formation in 2014, Cash Cloud's principal place of business has been in Clark

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142908162.3

County, Nevada. Cash Cloud operates under the trade name Coin Cloud. This trade name is registered with Clark County, Nevada. The federally registered trademark "Coin Cloud" is owned by Cash Cloud.

8.      Since its inception in 2014, Cash Cloud has grown to become a recognized leader in the retail digital currency (commonly known as cryptocurrency) trading industry. Using specialized kiosks akin to ATMs, Cash Cloud provides its customers with the ability to buy and sell digital currency conveniently and efficiently.

9.      Defendant Lux Vending, LLC d/b/a Bitcoin Depot ("Defendant" or "Bitcoin Depot") is a limited liability company organized under the laws of the State of Georgia. At all times relevant herein, Defendant's principal place of business is and has been 3343 Peachtree Rd. NE, Ste. 750, Atlanta, GA 30326, or alternatively, 2870 Peachtree Rd #327, Atlanta, Georgia, 30305.

10.     Bitcoin Depot is a substantial shareholder in the Canadian corporation, BitAccess, Inc. ("BitAccess") and, in filings with the SEC, has disclosed its efforts to fully acquire BitAccess through a special purpose acquisition company. Until recently, BitAccess had been the primary provider of the software Cash Cloud used to operate its ATM-style kiosks. Without software, Cash Cloud cannot operate its kiosks.

## BRIEF NATURE OF ACTION

11.     Defendant is a direct competitor of Cash Cloud with similar ATM kiosks that it also seeks to place in retail stores for use by consumers. For months, Defendant has waged an improper campaign to harm Cash Cloud, through, among other things, interference with Cash Cloud's contractual relationships, deprivation of the software needed to operate Cash Cloud's kiosks, and the use of unfair and deceptive trade practices in a wrongful effort to cause Cash Cloud's hosts to cease doing business with Cash Cloud.

12.     **Interference with Cash Cloud's Agreement with BitAccess**. Leveraging its position with BitAccess, including, but not limited to, its plan to fully acquire BitAccess through a special purpose acquisition company, Defendant caused BitAccess to wrongfully renounce its agreement to provide licensed software and software services to Cash Cloud as detailed in the 2020 Master Sales Purchase Agreement between Cash Cloud and BitAccess (the "2020 Purchase

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142908162.3

Agreement"). This renunciation violates the express terms of the 2020 Purchase Agreement, under which "BitAccess grants Customer a **perpetual**, royalty-free license to use the Device Software to receive the BTM Services."

13. **Wrongful Deprivation of the Software Needed to Operate Cash Cloud's Kiosks**. Defendant used its status with BitAccess to wrongfully deactivate the software used to operate Cash Cloud's kiosks, in Nevada and elsewhere. The deprivation of the software services was done over the objection of BitAccess's officers and in contravention of the representations BitAccess made to a Canadian court that it would not stop providing the software services to Cash Cloud.

14. **Interference with Cash Cloud's Relationship with Its Hosts**. Defendant has been contacting Cash Cloud's kiosks hosts, with whom Cash Cloud has executory contracts containing exclusivity clauses, in an attempt to lure hosts into breaking their contracts with Coin Cloud and to replace Coin Cloud kiosks with Bitcoin Depot kiosks. Defendant has made false and misleading statements to Coin Cloud hosts, and its actions constitute unfair or deceptive competition, which violate various state and federal laws, constitute a violation of the automatic stay, and meet the elements of multiple common law torts.

## GENERAL ALLEGATIONS

### Debtor's Bankruptcy Filing

15. On February 7, 2023 (the "Petition Date"),[1] Cash Cloud filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

16. Cash Cloud is authorized to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

17. No request has been made for the appointment of a trustee or examiner, and no statutory committee has been appointed.

### Cash Cloud's Business

18. Cash Cloud's business is centered on providing the general public the means to buy and sell digital currency (e.g., Bitcoin and other cryptocurrencies) using ATM-style digital currency machines ("DCMs").

---

[1] All capitalized terms not otherwise defined herein shall have those meanings ascribed to them in the Omnibus Declaration.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142908162.3

19.     Cash Cloud's customers purchase digital currency by depositing cash (U.S. dollars) in Cash Cloud's DCM, and receiving digital currency in the customer's digital currency wallet.  In turn, Cash Cloud's customers sell digital currency by sending digital currency to Cash Cloud, and receiving the corresponding amount of cash from the DCM.

20.     As of December 31, 2022, the Debtor operated approximately 4,800 DCMs, or kiosks ("Kiosk(s)") throughout the United States and Brazil, installed in some of the largest convenience, grocery and liquor store chains and prestigious malls.

21.     To facilitate the installation of the Kiosks, Cash Cloud entered into numerous contracts (the "Contracts") or leases ("Leases") with various parties ("Counterparty" or "Counterparties") having retail locations (commonly referred to as "hosts"), including convenience stores, malls, and enterprise grocery stores.  The terms in the Contracts and/or Leases vary. However, in general, the terms provide that Cash Cloud is permitted to install a Kiosk at a certain location ("Location") in exchange for compensation being paid to the Counterparty. There are thousands of Contracts or Leases, and the nature and amount of compensation varies and is sometimes in the form of a fixed monthly rental payment or a variable portion of the profit of the Kiosk. The Contracts and/or Leases typically have a 3 to a 7-year term, with automatic renewals, unless terminated by either party.

**The Parties are Direct Competitors**

22.     Defendant operates under a similar business model to Cash Cloud in that it has similar DCMs or Kiosks that it seeks to install at retail locations for use by consumers in many of the same geographic markets as Cash Cloud.

23.     Cash Cloud's Contracts with its hosts contain exclusivity clauses such that the counterparty may not host a competing company's kiosks at the same location where a Cash Cloud kiosk is installed.

/ / /

/ / /

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142908162.3

**The Cash Cloud-BitAccess Purchase Agreements**

24.     The first written contract between Cash Cloud and BitAccess was a Master Purchase Agreement dated September 4, 2015 (the "2015 Purchase Agreement"). A copy of the 2015 Purchase Agreement is attached as Exhibit 1.

25.     Under the 2015 Purchase Agreement, Cash Cloud purchased several Kiosks from BitAccess.  Cash Cloud also purchased instances of the Licensed Software, the rights to use that Licensed Software on a perpetual basis, and support services to Cash Cloud's representatives in respect of technical issues that arose with the Licensed Software, like stuck transactions, a loss of communication between the Kiosk's hardware and software, and other issues ("the Support Services").

26.     The terms of the 2015 Purchase Agreement were discussed and negotiated by Christopher McAlary, Cash Cloud's Chief Executive Officer and founder, and Mohammed Adham, one of BitAccess' directors and principals.

27.     The 2015 Purchase Agreement did not contain provisions that allowed BitAccess to terminate the agreement at will or without notice. Rather, the agreement provided that BitAccess could only terminate the 2015 Purchase Agreement if Cash Cloud was non-compliant with applicable laws, in breach of the agreement, or if a regulator or government entity rendered the subject matter of the agreement illegal or subject to unreasonable operational charges and fees.

28.     These limited termination rights were deliberate, and they were put in place to protect Cash Cloud's business and its investment in the Kiosks.

29.     When Cash Cloud purchased the Kiosks and the accompanying instances of the Licensed Software from BitAccess, both Cash Cloud and BitAccess knew that the Licensed Software was required to run Cash Cloud's Kiosks.

30.     As such, Cash Cloud's future investment in the digital currency kiosk business was predicated on its ability to continue to use, and acquire additional instances of, the Licensed Software.

31.     Cash Cloud would not have entered into an agreement with BitAccess if Cash Cloud's ability to use the Licensed Software could be terminated at will or on short notice. That would have created the potential for an unacceptable threat to Cash Cloud's business to materialize.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142908162.3

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

32.    From 2015 to 2017, the market for digital currencies grew significantly. During that period, Cash Cloud purchased several additional Kiosks and instances of the Licensed Software from BitAccess.

33.    In 2017, Mr. Adham informed Mr. McAlary that BitAccess wanted to cease manufacturing and selling digital currency kiosks because it wanted to focus its efforts on the development and sale of its software.  Mr. Adham expressed that BitAccess wanted to continue selling instances of the Licensed Software to Cash Cloud and providing the accompanying Support Services.

34.    As a result of this development, Cash Cloud began purchasing kiosks from other manufacturers. However, Cash Cloud continued to acquire instances of the Licensed Software from BitAccess under the terms of the 2015 Agreement, which it ran on the Kiosks provided by BitAccess and on the Kiosks manufactured by third parties.

35.    In January 2020, Cash Cloud and BitAccess executed a second Master Purchase Agreement, referenced herein as the "2020 Purchase Agreement". A copy of the 2020 Purchase Agreement dated January 23, 2020, is attached as Exhibit 2.

36.    The 2020 Purchase Agreement was effectively an amendment to the 2015 Purchase Agreement. The amendments were primarily focused on memorializing changes to the service fees that Cash Cloud would pay to BitAccess to reflect the fact that Cash Cloud had scaled significantly since the 2015 Purchase Agreement.

37.    The transaction fees paid to BitAccess were substantial.  Prior to the deactivation of the Licensed Software, Cash Cloud paid hundreds of thousands of dollars each month to BitAccess in transaction fees.

38.    For the purposes of this dispute, the material terms of the 2020 Purchase Agreement were the same as the terms of the 2015 Purchase Agreement. Of particular significance, BitAccess agreed to continue to grant Cash Cloud a perpetual, royalty-free license to use the Licensed Software, and BitAccess continued to have the same limited termination rights as those contained in the 2015 Purchase Agreement.

39. The terms of the 2020 Purchase Agreement include the following:

142908162.3

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

a. BitAccess would provide Cash Cloud with a perpetual, royalty-free license, to use the Licensed Software on its kiosks (*See* Exhibit 4, at § 9.2);

b. BitAccess would earn a service fee based on the percentage of the total volume of monthly transactions that took place on Cash Cloud's kiosks using the BitAccess software (*See id.* at § 4.2);

c. the agreement would remain in full force unless, or until, it is terminated pursuant to section 7.2 (*See id.* at § 7.1);

d. BitAccess could only terminate the agreement if:

    i. Cash Cloud did not comply with applicable laws or failed to adhere to the terms of the 2020 Purchase Agreement; or

    ii. any requirement of a regulator or government body rendered Bitcoin, crypto-currencies, or the provision of services contemplated under the 2020 Purchase Agreement illegal or subject to unreasonable operational charges/fees (*See id.* at § 7.2).

e. BitAccess would provide Support Services (*See id.* at Schedule C);

40. After the 2020 Purchase Agreement was executed, Cash Cloud continued to purchase instances of the Licensed Software and use the Support Services when required.

**BitAccess' Purported Termination of the 2020 Purchase Agreement**

41. After the 2020 Purchase Agreement was executed, Cash Cloud continued to purchase instances of the Licensed Software and use the Support Services when required.

42. On August 4, 2022, BitAccess' Chief Operations Officer, Andrew McDonald, sent Mr. McAlary an email whereby Mr. McDonald stated that BitAccess was purporting to terminate the 2020 Purchase Agreement.

43. Mr. McDonald also attached a letter to his August 4, 2022 email. In the letter, Mr. McDonald stated that BitAccess was purporting to terminate the 2020 Purchase Agreement within 14 days (*i.e.*, on August 18, 2022). Mr. McDonald further stated that, as a result of the termination, "on August 18th, 2022 at 4 pm EDT, all Coin Cloud kiosks that utilize BitAccess software will cease to function, access to the BitAccess Operator Panel will be disabled, and all API keys will be revoked."

142908162.3

44.    In his email and letter, Mr. McDonald did not claim that Cash Cloud was in breach of the 2020 Purchase Agreement, nor did he assert that BitAccess had a prescribed right to terminate the agreement on 14 days' notice.

45.    Mr. McAlary, Cash Cloud's CEO, immediately responded via email to Mr. McDonald's correspondence.

46.    In that responsive email, Mr. McAlary requested an opportunity to discuss the matter.

47.    On August 5, 2022, Mr. McDonald responded via email. In his August 5th email, Mr. McDonald stated that BitAccess refused to speak further about the matter. Mr. McDonald stated: "The decision has been made and there is really nothing to discuss at this time."

**The Canadian Litigation**

48.    From August 5, 2022 through August 15, 2022, Cash Cloud made several demands that BitAccess not deactivate the Licensed Software.  BitAccess, however, refused to alter its stated position.

49.    On August 11, 2022, faced with BitAccess' threat to deactivate the Licensed Software, Cash Cloud filed in the Ontario [Canada] Superior Court of Justice a Notice of Application against BitAccess (the "Canadian Litigation").

50.    On August 16, 2022, Cash Cloud filed a Notice of Arbitration with the Canadian Arbitration Association (the "Canadian Arbitration").

51.    On August 17, 2022, Cash Cloud and BitAccess each filed briefing in the Canadian Litigation.

52.    On August 18, 2022, a hearing was held in the Canadian Litigation.  Justice Jaye Hooper presided.

53.    During that August 18th hearing – literally while that hearing was taking place Cash Cloud's access to the Licensed Software was deactivated, causing of Cash Cloud's Kiosks using that Licensed Software to become inoperable.

54.    Cash Cloud immediately informed Justice Hooper of this development.  At that time, Justice Hooper admonished BitAccess to reactivate Cash Cloud's access to the Licensed Software in order to keep the status quo until Justice Hooper issued a decision.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142908162.3

55. BitAccess represented to Justice Hooper that BitAccess would immediately reactivate Cash Cloud's access to the Licensed Software and would not again deactivate it unless authorized by the Canadian Court of Justice.

56. Later that day, Cash Cloud's access to the Licensed Software was reactivated.

**Defendant's Acquisition of BitAccess**

57. Defendant is Cash Cloud's largest direct competitor. Defendant operates a network of approximately 7,000 cryptocurrency kiosks throughout the United States, and elsewhere.

58. According to BitAccess's Canadian counsel, Defendant began acquiring an ownership interest in BitAccess in 2021. Upon information and belief, after acquiring an ownership interest in BitAccess, Defendant learned of the contractual relationship between Cash Cloud and BitAccess, including the 2020 Purchase Agreement.

59. On August 25, 2022, GSR II Meteora Acquisition Corp. ("Meteora"), a special purpose acquisition company and Delaware corporation, filed a Form 8-K with the United States Securities and Exchange Commission ("SEC").

60. Meteora's August 25th Form 8-K disclosed an upcoming business merger that involves the Defendants Defendant and BitAccess. An excerpt from Meteora's August 25th Form 8-K is attached as Exhibit 3.

61. Meteora's August 25th Form 8-K included the following chart that illustrates the competitiveness between Defendant and Cash Cloud:



62. In Meteora's August 25th Form 8-K, Meteora disclosed that it would be acquiring Defendant to form a new public company.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142908162.3

63.    In Meteora's August 25th Form 8-K, Meteora also disclosed that, as part of the acquisition transaction, all of the issued and outstanding shares of BitAccess will be purchased by Meteora's new public company.  This is discussed under a section of the Form 8-K titled "BitAccess Buyout". The relevant provision provides [emphasis added]:

> **Section 6.8** BitAccess Buyout. Promptly after the Closing (and no later than 30 Business Days following the Closing), (a) BT OpCo shall contribute a portion of the Contribution Amount (such amount, the "BitAccess Contribution Amount") to Intuitive Software, LLC, a Delaware limited liability company, which shall then contribute such amount to Digital Gold Ventures Inc., an Ontario corporation ("Digital Gold"), and (b) BitAccess, Inc., an Ontario corporation ("BitAccess") shall, and BT OpCo shall cause Digital Gold to, use such BitAccess Contribution Amount to (and use solely for the purposes set forth in this Agreement), purchase or cause cancellation of all of the outstanding capital stock of or other equity interests in BitAccess, including BitAccess Options, not held by Digital Gold as of the date of such purchase, in accordance with the terms of the amended and restated shareholders agreement of BitAccess, dated as of July 20, 2021, and on such terms that are negotiated with the holders of such shares of BitAccess, such that immediately after the consummation of such purchase transactions, BitAccess shall be a wholly owned subsidiary of Digital Gold (the amount required to effect such purchase, the "BitAccess Payment Amount"); provided, that, at BT Assets' discretion, a portion of the BitAccess Payment Amount may consist of shares of capital stock of PubCo (which such stock PubCo shall contribute (or shall be deemed to have contributed in accordance with Treasury Regulations Section 1.1032-3) to BT OpCo and BT OpCo shall then contribute in the same manner as the BitAccess Contribution Amount), in which case the BitAccess Contribution Amount will be decreased accordingly and BT OpCo shall issue to PubCo a number of Common Units equal to the number of shares of PubCo capital stock included in the BitAccess Payment Amount. At BT Assets' discretion, the aggregate value of the shares of capital stock of PubCo used for such purposes may be up to 75% greater than the amount equal to (a) the fair market value of such other capital stock of BitAccess being purchased, minus (b) the BitAccess Contribution Amount.

64.    Simply put, the Form 8-K stated that BitAccess will be fully acquired by Cash Cloud's largest direct competitor.

65.    Under information and belief, this impending acquisition by Cash Cloud's largest direct competitor revealed the actual motive for the improper effort to terminate the 2020 Purchase Agreement and the wrongful deactivation of Cash Cloud's access to the Licensed Software on August 18, 2022.   Upon information and belief, Defendant used its position with BitAccess and the contemplated acquisition of BitAccess to cause BitAccess to renounce the 2020 Purchase Agreement and terminate the provision of the software services, including the deactivation of the BitAccess Licensed Software on Cash Cloud's Kiosks.

66.    Meteora's disclosures in its August 25th Form 8-K belies the previous justifications for seeking to terminate the 2020 Purchase Agreement without cause.

/ / /

/ / /

/ / /

142908162.3

**Defendant Hijacks Control Over the BitAccess Software and Deactivates Cash Cloud's Access to the Licensed Software**

67.    On August 30, 2022, Cash Cloud's access to the Licensed Software was again deactivated, in violation of Justice Hooper's admonition and in violation of BitAccess's representation that it would not do so again without authorization by the Canadian Court of Justice (the "Canadian Court").

68.    Upon learning of this deactivation, Cash Cloud's Canadian counsel immediately sent an email to BitAccess' Canadian counsel, requesting an explanation for BitAccess' actions.

69.    Later on August 30, 2022, BitAccess' Canadian counsel responded via email, in which he explained that (1) Defendant was now "the parent company of BitAccess," (2) Defendant "had taken control, today, of BitAccess' ability to deactivate the cloud-based software that operates Cash Cloud's kiosks," (3) "Mr. Adham [BitAccess' principal] brought the undertaking [not to deactivate Cash Cloud's access to the Licensed Software] to their attention and vehemently opposed the move," (4) BitAccess' Canadian Counsel "counselled unequivocally against deactivation pending the decision of the court," and (5) "[u]nder the circumstances, BitAccess is no longer able to fulfil the undertaking for reasons beyond its control":

70.    The following day, on August 31, 2022, BitAccess's Canadian counsel wrote a letter to the Canadian Court that largely repeated what was contained in the August 30, 2022 email.  The letter stated in relevant part:

- "The parent company of BitAccess Inc. ("BitAccess"), Lux Vending LLC d.b.a. Bitcoin Depot, a company incorporated in Georgia ("Lux Vending"), took control yesterday of BitAccess' ability to deactivate the cloud-based software that operates the kiosks of Cash Cloud, Inc. ("Cash Cloud"). This was sudden and unexpected."

- "Lux Vending also informed BitAccess of its intention to deactivate the cloud-based software operating on Cash Cloud's kiosks…"

- "Upon learning of Lux Vending's intention yesterday, Moe Adham, the CEO of BitAccess, vehemently opposed the move. He also brought to their attention the undertaking by BitAccess, given to the court to maintain status quo."

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142908162.3

- "When this was brought to my attention, I counselled unequivocally against deactivation, pending the court's decision on the application."

- "When the undertaking was given at the court hearing on August 18, 2022, Mr. Adham was in a position to instruct me to provide that undertaking on behalf of the company. At that time, BitAccess alone controlled its operations and the ability to deactivate the cloud-based software on kiosks, and Mr. Adham had the authority to direct BitAccess on this issue and ensure that the undertaking was complied with. The developments that occurred yesterday were unexpected, surprising and unforeseen."

- "[U]under the circumstances, BitAccess is no longer able to fulfil the undertaking for reasons beyond its control."

71.    Exhibit 4 attached hereto contains a copy of the August 31, 2022 letter from BitAccess's counsel, Peter Mantas, to the Canadian Court.

72.    In other words, after it hijacked BitAccess's control over the provision of the Licensed Software used to operate Cash Cloud's Kiosks, Defendant thereafter deactivated the Licensed Software to thousands of Cash Cloud's Kiosks, in Nevada and elsewhere, rendering those Kiosks inoperable.

**Defendant's Interference with the 2020 Purchase Agreement and Deactivation of the Licensed Software Damaged Cash Cloud**

73.    As a direct and proximate result of the deactivation of the Licensed Software, these Kiosks immediately ceased to function and became inoperable.

74.    This sudden shutdown crippled Cash Cloud's business as Cash Cloud was unable to process any transactions on thousands of Kiosks that relied upon the BitAccess software.  This was precisely the purpose of Defendant's improper conduct—to prevent Cash Cloud from doing business.

75.    Defendant's interference with the contractual relationship between Cash Cloud and BitAccess and the deactivation of the Licensed Software caused substantial harm to Cash Cloud's business, its goodwill, and reputation.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142908162.3

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

76.    The damages from Defendant's improper interference and deactivation of the Licensed Software include not only the loss of revenue from the Kiosks, but also the out of pocket expense to send technicians to each Kiosk and install alternate software on the Kiosk.

77.    Cash Cloud's damages are estimated to be in excess of several million dollars.

78.    To illustrate the magnitude of the harm caused by Defendant's misconduct, in the months before the deactivation of the Licensed Software, Cash Cloud was paying hundreds of thousands of dollars per month to BitAccess for use of the Licensed Software, amounts which represented less than 1% of total the transaction volume.  Deactivation of the Licensed Software completely denied Cash Cloud the expected profits from those transactions using the Licensed Software—amounts which greatly exceed BitAccess's transaction fees.

**Defendant Makes False and Misleading Statements in Attempts to Poach Hosts**

79.    Upon information and belief, after Cash Cloud's bankruptcy filing, Defendant began a campaign to target Cash Cloud's hosts to replace Cash Cloud Kiosks with Defendant's kiosks.

80.    Defendant made false and misleading statements to at least one of Cash Cloud's Kiosk hosts that Cash Cloud "was unable to reorganize its debts," implying that Cash Cloud was liquidating and ceasing its business operations, which is the exact opposite of the truth.   In fact, the entire purpose of this Chapter 11 bankruptcy proceeding is to reorganize Cash Cloud's debts.

81.    Defendant told the same Cash Cloud host that it "doesn't know what happens from a contractual standpoint between you all and Coin Cloud, but we're still highly interested in partnering with Royal Farms!"

82.    In its attempted solicitation of Royal Farms, Landon Thomas, a representative of Defendant stated today (the day that this action is being initiated) in an email to Frank Schilling of Royal Farms (one of Cash Cloud's large enterprise hosts), "I've also heard that they [Cash Cloud] have stated they will resume payments, do it for a month or two, and then stop paying the retailers again."   This statement, along with others in the email further confirm the wrongfulness of Defendant's actions in improperly and unjustifiably interfering with Cash Cloud's contractual relationships with its hosts.  Below is an image of this email.

142908162.3

**From:** Landon Thomas <landon@bitcoindepot.com>
**Sent:** Friday, March 10, 2023 4:39 PM
**To:** Frank Schilling <fschilling@royalfarms.com>
**Subject:** Re: Bitcoin ATM Industry Shake-Up - CoinCloud Bankruptcy

**[EXTERNAL SENDER - Do NOT Click Unexpected Links/Attachments]**

Frank,

I know we had spoken in the past about setting up a program with Royal Farms. It was brought to my knowledge that your stores are hosting CoinCloud kiosks. I've heard many different things from different hosts ranging from the machines being online, but customers not receiving their crypto to CoinCloud being completely unresponsive to the host after not being paid for months. I've also heard that they have stated they will resume payments, do it for a month or two, and then stop paying the retailers again.

With that being said, I wanted to see how Royal Farms' experience has been with CoinCloud and if there is an opportunity to explore our program again. We are in the process of going public and will be listed on the NASDAQ in early Q2. Therefore a lot of the worries and woes you have experienced with CoinCloud will not be a problem Bitcoin Depot faces. I look forward to hearing back from you and hope you have a great weekend!

83.    Defendant told other hosts that Cash Cloud "is out of business" and that it "wanted to replace Cash Cloud's machines with [Defendant's] and take over the rent agreement."

84.    Defendant's activities go beyond the pale of fair and healthy competition in that Defendant used false and misleading statements in an attempt to lure Cash Cloud's Kiosk hosts to break their contracts with Cash Cloud and to "partner" with Defendant instead.

85.    Defendant's improper actions have caused actual disruption of the contractual relationship between Cash Cloud and its hosts, and, upon information and belief, Defendant's misconduct has caused a host to breach the Contract with Cash Cloud.

**Trademark Infringement**

86.    Further demonstrating Defendant's improper campaign against Cash Cloud, Defendant has used Cash Cloud's federally registered trademark "Coin Cloud" in its advertising to mislead customers into directing their internet traffic to Defendant's website rather than Cash Cloud's. An image of such improper use and infringement on Cash Cloud's trademark by Defendant is below:

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142908162.3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)



142908162.3

87.     Cash Cloud has not permitted Defendant to use Cash Cloud's trademark in such fashion.

88.     As a direct and proximate result of Defendant's misconduct, Cash Cloud has suffered substantial damages, including, but not limited to, lost revenue, loss of goodwill, and reputational harm.

89.     Legal relief alone would be inadequate to remedy the effects of Defendant's trademark infringement.  Equitable relief is necessary.

**FIRST CLAIM FOR RELIEF**
**(Temporary Restraining Order and Preliminary Injunctive Relief)**

90.     Cash Cloud repeats and realleges every allegation contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

91.     The Court has the authority, pursuant to 11 U.S.C. § 105(a), to issue any order, process or judgment that is necessary or appropriate to: (i) carry out the provisions of the Bankruptcy Code, and (ii) enforce the Court's own orders.  In addition, the Court has authority pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure to issue a temporary restraining order and preliminary injunctive relief against the Defendants.

92.     Defendant's campaign to poach Cash Cloud's Kiosk hosts will result in irreparable injury to Cash Cloud and leave Cash Cloud without an adequate remedy at law.  If any Kiosk hosts entered into contracts with Defendant to replace Cash Cloud machines with Defendant's machines, it would result in an immediate and devastating loss of revenue, impairing Cash Cloud's ability to reorganize in its Chapter 11 bankruptcy case.  Such contracts should even be deemed void as violations of the automatic bankruptcy stay.  Moreover, reversing such a void transaction would then require such host to break its new contract with Defendant and result in unnecessary removal and installation costs.

93.     Defendant's continued infringement on Cash Cloud's federally registered trademark will result in irreparable injury to Cash Cloud and leave Cash Cloud without an adequate remedy at law.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-8899
(702) 597-5503 (fax)

142908162.3

94.     Cash Cloud is likely to succeed on the merits because Defendant's wrongful conduct is evident on its face, and Defendant has no viable defenses to Cash Cloud's Complaint.

95.     Cash Cloud seeks a temporary restraining order and injunction against Defendant, its agents, servants, employees, or any other individual and/or entity in active concert or participation with Defendant to preclude and enjoin Defendant from: (1) continuing any further contact with existing Cash Cloud Kiosk hosts; (2) entering into any contracts with existing Cash Cloud kiosk hosts; and (3) infringing or otherwise using Cash Cloud's trademark in a misleading fashion to redirect online traffic from Cash Cloud's website to Defendant's website.

## SECOND CLAIM FOR RELIEF
### (Violation of Automatic Stay, 11 U.S.C. § 362)

96.     Cash Cloud repeats and realleges every allegation contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

97.     The automatic stay prohibits, among other things, acts to obtain possession of or to exercise control over the property of a debtor's estate. See 11 U.S.C. §§ 362(a)(3).

98.     Cash Cloud's executory contracts with its Kiosk hosts constitute property of the debtor's estate over which Defendant has sought to exercise control or take possession.

99.     Defendant also violated the automatic stay by soliciting its customers making false and misleading statements, thereby impairing Cash Cloud's goodwill.

100.     Pursuant to 28 U.S.C. § 2201 and Bankruptcy Rule 7001, Plaintiff is therefore entitled to a judgment that Defendant has willfully violated the automatic stay, with an award of actual damages to be determined by a trier of fact.

## THIRD CLAIM FOR RELIEF
### (Violation of Lanham Act, 15 U.S.C. § 1125)

101.     Cash Cloud repeats and realleges every allegation contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

102.     Defendant has made and continues to make false and misleading statements about

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142908162.3

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Plaintiff's products and services, including its plans to reorganize its debts and remain an ongoing operation, in written and oral communications to Cash Cloud's Kiosk hosts, in violation of 15 U.S.C. § 1125(a).

103.    Defendant has made and continues to make false and misleading statements about Defendant's products through the use of Cash Cloud's federally registered trademark Coin Cloud in its online advertising.

104.    Defendant's marketing and solicitation statements are false and/or deceiving and are likely to deceive or confuse a substantial segment of their intended audience in falsely portraying Cash Cloud's bankruptcy case as a liquidation, rather than an organization.

105.    Defendant's marketing and solicitation statements are false and/or deceiving and are likely to deceive or confuse a substantial segment of their intended audience in falsely portraying Defendant's website as that belonging to Cash Cloud.

106.    Defendant's false and misleading statements were material in that they are likely to influence the decisions of Plaintiff's kiosk hosts as well as Cash Cloud's customers.

107.    Defendant's false and misleading statements were, are, and continue to be made in interstate commerce.

108.    Defendant's false and misleading statements were, are and continue to be made intentionally and willfully and with a reckless disregard for the rights of Cash Cloud.

109.    Defendant's false and misleading statements have resulted and will continue to result in actual or probable injury to Cash Cloud.

110.    Defendant's false and misleading statements have damaged and will continue to damage Cash Cloud's business reputation and goodwill.

111.    Defendant's false and misleading statements have and are likely to continue to injure Cash Cloud by causing Cash Cloud to lose customers and kiosk hosts, resulting in monetary damages that are presently unknown to Cash Cloud, in an amount to be determined at trial.

112.    Defendant's actions were oppressive, fraudulent, and/or malicious and thus Cash Cloud is entitled to punitive damages.

113.    Accordingly, Cash Cloud is entitled to recover (i) Defendant's profits, (ii) monetary

142908162.3

damages sustained by Cash Cloud, (iii) treble damages as provided under 15 U.S.C. § 1117(a), (iv) costs as provided under 15 U.S.C. § 1117(a), and (v) attorneys' fees under 15 U.S.C. § 1117(a).

## FOURTH CLAIM FOR RELIEF
### (Consumer Fraud/Deceptive Trade Practices)

114. Cash Cloud repeats and realleges every allegation contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

115. By engaging in the acts alleged above, Defendant, in the course of its business, has engaged in consumer fraud and/or deceptive trade practices by, among other things:

    a. Disparaging the goods, services or business of Cash Cloud by false or misleading representation of fact; and

    b. Knowingly making a false representation as to affiliation, connection, association with or certification by Cash Cloud;

116. Defendant's actions have been, and continue to be, knowing and willful.

117. As a direct and proximate result of Defendant's acts, Cash Cloud has been irreparably harmed and damaged, and will continue to be irreparably harmed and damaged.

118. As a direct, natural, and proximate result of Defendants' improper acts, Cash Cloud has suffered substantial damages, including, but not limited to, lost revenue, out of pocket expenditures, loss of goodwill, and reputational harm, in an amount to be determined at trial.

119. Defendant's actions were oppressive, fraudulent, and/or malicious and thus Cash Cloud is entitled to punitive damages.

120. Cash Cloud is further entitled to costs and attorneys' fees.

## FIFTH CLAIM FOR RELIEF
### (Tortious Interference with Contract – Host Agreements)

121. Cash Cloud repeats and realleges every allegation contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

122. Cash Cloud has thousands of executory Contracts with its Kiosk hosts where Cash

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142908162.3

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1    Cloud's Kiosks are located.

2    123.    Through its marketing and solicitation to Cash Cloud's Kiosk hosts, while making

3    false and misleading statements, Defendant has and continues to intentionally and improperly

4    interfere with contracts between Cash Cloud and its kiosk hosts by inducing or otherwise causing

5    Cash Cloud's hosts to breach their contracts.

6    124.    Defendant knew of Cash Cloud's Contracts with its kiosk hosts when it initiated its

7    false marketing campaign and made the false and misleading statements described above.

8    125.    Defendant's false and misleading statements were directed to Cash Cloud's current

9    and potentially prospective Kiosk hosts.

10    126.    Defendant intentionally and without justification interfered with and continues to

11    interfere with Contracts between Cash Cloud and its kiosk hosts by inducing and/or causing a breach

12    of those contracts.

13    127.    As a direct, natural, and proximate result of Defendant's improper acts, Cash Cloud

14    has suffered substantial damages, including, but not limited to, lost revenue, out of pocket

15    expenditures, loss of goodwill, and reputational harm, in an amount to be determined at trial.

16    128.    Defendant's actions were oppressive, fraudulent, and/or malicious and thus Cash

17    Cloud is entitled to punitive damages.

18    ## SIXTH CLAIM FOR RELIEF
(Tortious Interference with Contract – 2020 Purchase Agreement)

19    129.    Cash Cloud incorporates the foregoing allegations as though fully set forth herein.

20    130.    The 2020 Purchase Agreement was and is a valid contract between BitAccess and

21    Cash Cloud.

22    131.    Defendant knew of the 2020 Purchase Agreement.

23    132.    Defendant committed intentional acts intended to or designed to disrupt performance

24    under the 2020 Purchase Agreement.

25    133.    Defendant's intentional acts caused an actual disruption of the 2020 Purchase

26    Agreement.  BitAccess breached the 2020 Purchase Agreement in renouncing the same, deactivating

27    the Licensed Software, and ceasing the software services provided thereunder.

28    134.    Defendant's actions were unjustified, improper and were not privileged.   Indeed,

142908162.3

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Defendant used its position with BitAccess to cause BitAccess to act against its own financial best interest in (1) renouncing the 2020 Purchase Agreement; and (2) deactivating the Licensed Software. Because BitAccess was paid through transaction fees, deactivating the Licensed Software prevented the completion of any transactions, therefore preventing the payment of the associated transaction fees.

135.    As a direct, natural, and proximate result of Defendant's improper acts, Cash Cloud has suffered substantial damages, including, but not limited to, lost revenue, out of pocket expenditures, loss of goodwill, and reputational harm, in an amount to be determined at trial.

136.    Defendant's actions were oppressive, fraudulent, and/or malicious and thus Cash Cloud is entitled to punitive damages.

### SEVENTH CLAIM FOR RELIEF
**(Intentional Interference with Prospective Business Relations)**

137.    Cash Cloud incorporates the foregoing allegations as though fully set forth herein.

138.    Cash Cloud executes new customer agreements through a new customer's use of a Cash Cloud Kiosk.

139.    Such new customer agreements are prospective contractual relationships between Cash Cloud and Cash Cloud's customers.

140.    Defendant knew of these prospective contractual relationships between Cash Cloud and Cash Cloud's customers.

141.    Defendant committed intentional acts intended to or designed to disrupt such prospective contractual relationships.

142.    Defendant's intentional acts caused an actual disruption of such prospective contractual relationships.

143.    Defendant had no privilege or justification for their disruption of such prospective contractual relationships.

144.    As a direct, natural, and proximate result of Defendant's intentional acts, Cash Cloud has suffered substantial damages, including, but not limited to, lost revenue, out of pocket expenditures, loss of goodwill, and reputational harm, in an amount to be determined at trial.

145.    Defendant's actions were oppressive, fraudulent, and/or malicious and thus Cash

142908162.3

Cloud is entitled to punitive damages.

## EIGHTH CLAIM FOR RELIEF
### (Injurious Falsehoods)

146.   Cash Cloud repeats and realleges every allegation contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

147.   Defendant's publication of false and misleading statements about Cash Cloud caused and continues to cause Cash Cloud pecuniary loss.

148.   Defendant intended for the publication of its false statements to result in harm to the interests of Cash Cloud having a pecuniary value, or Defendant either recognized or should have recognized that the publication of its false statements was likely to result in harm to the interests of Cash Cloud having a pecuniary value.

149.   Defendant knew that is published statements in its marketing solicitations were and continue to be false, or Defendant acted in reckless disregard of the truth or falsity of its published statements.

150.   Defendant's publication of false and misleading statements in its marketing solicitations were and continue to be substantial factors in bringing about Cash Cloud's pecuniary losses.

151.   Defendant's false and misleading statements in its marketing solicitations have and are likely to continue to injure Cash Cloud by causing Plaintiff to lose Kiosk hosts, resulting in business losses in an amount to be determined at trial and that are presently unknown to Cash Cloud, but which are believed to be substantial are accumulating on an ongoing basis.

152.   Defendant's actions were oppressive, fraudulent, and/or malicious and thus Cash Cloud is entitled to punitive damages.

## NINTH CLAIM FOR RELIEF
### (Defamation)

153.   Cash Cloud repeats and realleges every allegation contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142908162.3

154. Defendant's false and misleading statements in its marketing solicitations have and continue to defame Cash Cloud causing actual harm to Cash Cloud's business reputation.

155. Defendant published its false and misleading statements to third parties.

156. Defendant's marketing solicitations identify Cash Cloud and include defamatory, material, false statements about Cash Cloud.

157. Defendant's marketing solicitations were made with a conscious intent to publish the false and defamatory statements.

158. Defendant's false and defamatory statements were published with actual malice, and with knowledge that the statements were false.

159. Defendant's false and defamatory statements were negligently published.

160. Defendant's false and defamatory statements have caused and continue to cause actual reputational harm to Cash Cloud.

161. Upon information and belief, Defendant's false and defamatory statements have caused and continue to cause the loss of Kiosk hosts or a general diminution in Cash Cloud's business.

162. Cash Cloud is entitled to damages in an amount to be determined at trial due to Defendant's false and defamatory statements.

163. Defendant's actions were oppressive, fraudulent, and/or malicious and thus Cash Cloud is entitled to punitive damages.

/ / /

/ / /

/ / /

142908162.3

1

WHEREFORE, Cash Cloud prays for judgment against Defendant as follows:

2

a) For equitable/injunctive relief as requested in its first cause of action;

3

b) For actual damages in an amount to be determined by a trier of fact, as well as consequential,

4

punitive, and/or treble damages;

5

c) For reasonable attorney's fees and costs; and

6

d) For any other relief this Court finds just and proper.

7

Dated this 10th day of March, 2023.

Respectfully submitted by:

8

9

**FOX ROTHSCHILD LLP**

10

*/s/ Brett A. Axelrod, Esq.*
BRETT A. AXELROD, ESQ.

11

Nevada Bar No. 5859
JEANETTE E. MCPHERSON, ESQ.

12

Nevada Bar No. 5423
NICHOLAS A. KOFFROTH, ESQ.

13

Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.

14

Nevada Bar No. 16023
1980 Festival Plaza Drive, Suite 700

15

Las Vegas, Nevada 89135

16

17

*Counsel for Debtor Cash Cloud Inc.*

18

**THE JIMMERSON LAW FIRM, P.C.**

19

JAMES J. JIMMERSON, ESQ.
Nevada Bar No. 000264

20

JAMES M. JIMMERSON, ESQ.
Nevada Bar No. 12599

21

415 South 6th Street, Suite 100
Las Vegas, Nevada 89101

22

23

*[Proposed] Counsel for Debtor
Cash Cloud Inc.*

24

25

26

27

28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142908162.3