# EXHIBIT 7

# EXHIBIT 7

BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
JEANETTE E. MCPHERSON, ESQ.
Nevada Bar No. 5423
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
         jmcpherson@foxrothschild.com
         nkoffroth@foxrothschild.com
         zwilliams@foxrothschild.com

JAMES J. JIMMERSON, ESQ.
Nevada Bar No. 000264
JAMES M. JIMMERSON, ESQ.
Nevada Bar No. 12599
**THE JIMMERSON LAW FIRM, P.C.**
415 South 6th Street, Suite 100
Las Vegas, Nevada 89101
Telephone:    (702) 388-7171
Facsimile:    (702) 380-6413
Email: jimmerson@jimmersonlawfirm.com
         jmj@jimmersonlawfirm.com

*Counsel for Debtor Cash Cloud Inc.*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>CASH CLOUD, INC.,<br>dba COIN CLOUD,<br><br>Debtor. | Bankruptcy Case No. Case No. 23-10423<br>Chapter 11<br><br>Adv. Case No. 23-01015-MKN<br><br>**<u>DECLARATION OF CHRISTOPHER MCALARY IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER</u>** |

1

|   |   |
|---|---|
| CASH CLOUD, INC., dba COIN CLOUD, | |
| Plaintiff, | |
| v. | |
| Lux Vending, LLC d/b/a Bitcoin Depot, | |
| Defendant. | |

I, Christopher McAlary, hereby declare as follows:

1. I am the founder, Chief Executive Officer, and the Chairman of the Board of Directors for Plaintiff Cash Cloud Inc. dba Coin Cloud ("Plaintiff" or "Cash Cloud"). I am over 18 years of age, and I have personal knowledge of the facts set forth below, except those made upon information and belief, and as to those, I believe them to be true.

2. As Chief Executive Officer for Cash Cloud, part of my job duties includes overseeing the maintenance of relationships with Cash Cloud's hosts, the efforts to retain new hosts, and understanding the competitive environment in which Cash Cloud operates.

3. This declaration is made in support of Plaintiff's Motion for Temporary Restraining Order (the "Motion").

4. Cash Cloud's business is centered on providing the general public the means to buy and sell digital currency (e.g., Bitcoin and other cryptocurrencies) using ATM-style digital currency machines ("DCMs"). Cash Cloud's customers purchase digital currency by depositing cash (U.S. dollars) in Cash Cloud's DCM, and receiving digital currency in the customer's digital currency wallet. In turn, Cash Cloud's customers sell digital currency by sending digital currency to Cash Cloud, and receiving the corresponding amount of cash from the DCM.

5. As of December 31, 2022, Cash Cloud operated approximately 4,800 DCMs, or kiosks throughout the United States and Brazil, installed in some of the largest convenience, grocery and liquor store chains and prestigious malls.

6. To facilitate the installation of the Kiosks, Cash Cloud entered into numerous contracts or leases with various parties having retail locations (commonly referred to as "hosts"),

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

including convenience stores, malls, and enterprise grocery stores. The host contracts are essential to Cash Cloud's business as they establish the right for Cash Cloud to operate its kiosks at each location.

7. The terms in the host contracts vary. However, in general, the terms provide that Cash Cloud is permitted to install a Kiosk at a certain location in exchange for compensation being paid to the host.

8. Cash Cloud has thousands of host contracts, and the nature and amount of compensation varies and is sometimes in the form of a fixed monthly rental payment or a variable portion of the profit of the kiosk. The host contracts typically have a 3 to 7-year term, with automatic renewals, unless terminated by either party.

9. Defendant is a direct competitor with Cash Cloud. Defendant and Cash Cloud are two of the largest digital currency kiosk operators in the country.

10. Upon information and belief, Defendant knew that Cash Cloud had contracts with its hosts and intended for that contractual relationship to be disrupted as a result of Defendant's statements to Cash Cloud's hosts.

11. It is customary in Cash Cloud's industry that digital currency kiosk operators such as Cash Cloud and Defendant enter into long term contracts. On several occasions, Cash Cloud has been involved in competing for an enterprise host's business with Defendant, with the winning company earning host contract(s). It is also customary in the industry for host contracts to contain exclusivity provisions which make the kiosk operator the exclusive provider of digital currency trading services on the host property. Cash Cloud's host contracts contain such exclusivity provisions. Examples of the exclusivity provisions are as follows:

    a. <u>UNFI Host Contracts</u>

    Section II.01 Performance of Services: Host appoints Coin Cloud as its exclusive provider of Services in accordance with the terms and conditions of this Agreement. Services include but are not limited to operating, promoting, monitoring, and marketing all associated Kiosks. Through its Kiosks, Coin

Cloud will facilitate the buying and selling of digital currency and other related services.

    b. <u>Royal Farms Host Contracts</u>

Section IV.01 Exclusivity: Host agrees and warrants that it appoints Coin Cloud as its exclusive provider of the Services under this Agreement for the duration of this Agreement. However, if Coin Cloud removes a Kiosk in Host location, Host will have the right to install digital currency functionality on their ATM in that location.

    c. <u>7-Eleven (Umstott) Host Contracts</u>

Article V. EXCLUSIVITY Section V.01 Exclusivity: Host agrees and warrants that it appoints Coin Cloud as its exclusive provider of the Services under this Agreement for the duration of this Agreement.

12. Upon information and belief, Defendant has host contracts with exclusivity provisions as demonstrated in the attached Exhibit 1, which is, upon information and belief, a true and correct execution copy of the Kiosk Site Location Agreement between Defendant and Roja 2 LLC. Section 9 of this Kiosk Site Location Agreement contains an exclusivity provision in favor of Defendant.

13. Cash Cloud has several "enterprise hosts" which have contracted with Cash Cloud to host thousands of Cash Cloud's kiosks. Three of such enterprise hosts are UNFI, Royal Farms, and 7-Eleven. Cash Cloud intends to move forward with 722 kiosks located at UNFI locations, 219 kiosks located at Royal Farms locations, and 60 kiosks located at 7-Eleven locations. These three enterprise hosts alone represent nearly thirty percent of the kiosks intends to move forward with.

14. Upon information and belief, for several months, if not for over a year, Defendant has engaged in unfair and deceptive trade practices to harm Cash Cloud. For example, in August 2022, Defendant used its position with BitAccess, Inc. ("BitAccess," the company that, for years, had supplied the software needed to operate Cash Cloud's kiosks), to unilaterally (over the objection of BitAccess's officers and lawyer) deactivated the software provided to Cash Cloud, in derogation of the undertaking/representation made by BitAccess to a court in Canada that BitAccess would

continue to provide the software to Cash Cloud. *See* Exhibit 2, a copy of the August 31, 2022 letter from BitAccess's attorney, Peter Mantas to the Canadian court.

15.  Later in 2022, Bitcoin Depot wrongfully infringed on Cash Cloud's federally registered trademark, Coin Cloud, using the trademark to redirect internet traffic to Defendant's website. An image of such trademark infringement in Defendant's online advertising is below:

/ / /

/ / /

/ / /



16. After Cash Cloud's bankruptcy filing, Defendant engaged in a campaign to target Cash Cloud's hosts to replace Cash Cloud kiosks with Defendant's kiosks. For example, Defendant made false and misleading statements to at least one of Cash Cloud's Kiosk hosts (Royal Farms) that Cash Cloud "was unable to reorganize its debts," implying that Cash Cloud was liquidating and ceasing its business operations, which is the exact opposite of the truth. *See* Exhibit 3, true and correct copy of the February 8, 2023 email from Landon Thomas to Frank Schilling of Royal Farms as forwarded to Raymond Taddeo (a member of Cash Cloud staff) by Mr. Schilling that day, attached to the Motion.

17. Defendant told the same Cash Cloud host that it "doesn't know what happens from a contractual standpoint between you all and Coin Cloud, but we're still highly interested in partnering with Royal Farms!" *Id*.

18. Defendant told other hosts (7-Eleven locations) that Cash Cloud "is out of business" and that it "wanted to replace Cash Cloud's machines with [Defendant's] and take over the rent agreement." *See* Exhibit 4, a true and correct copy (as redacted for privilege) of the February 22, 2023 email from Todd Umstott, who operates various host 7-Eleven locations, to Michael Tomlinson (Chief Revenue Officer of Cash Cloud), attached to the Motion.

19. These statements to the 7-Eleven hosts are false. Cash Cloud is not out of business. Claiming that Cash Cloud is, wrongfully suggests that Cash Cloud will cease operating the kiosks on the host's property.

20. Defendant's improper campaign against Cash Cloud is continuing. On March 10, 2023 (the same day that the Complaint was filed), Defendant sent multiple emails to Cash Cloud hosts (UNFI and Royal Farms) seeking to take the business with that host away from Cash Cloud. *See* Exhibits 5, 6.

21. Attached to the Motion as Exhibit 5 is a true and correct copy (as redacted for privilege) of the March 10, 2023 email from Landon Thomas to Frank Schilling of Royal Farms as forwarded to Mr. Taddeo by Mr. Schilling that day.

22. Several statements made by Defendant to Royal Farms in the March 10, 2023 email are false, including: (1) "the machines being online, but customers not receiving their crypto;" (2)

7

"Coin Cloud being completely unresponsive to the host after not being paid for months;" and (3) they [Cash Cloud] stated they will resume payments, do it for a month or two, and then stop paying the retailers again." These statements are false and dangerous to Cash Cloud's business. A host who believes Defendant's false statements may switch to Bitcoin Depot fearing (1) a potential dispute with a customer who may not receive the cryptocurrency he/she purchased; (2) a non-responsive kiosk operator; and/or (3) that Cash Cloud would stop making host payments in the near future.

23. The first false statement about customers no receiving the digital currency they purchased is particularly harmful to Cash Cloud as it not only puts Cash Cloud's host relationships at risk, but also puts end-user relationships and Cash Cloud's goodwill at risk.

24. Attached to the Motion as Exhibit 6 is a true and correct copy (as redacted for privilege) of the March 10, 2023 email from Mark Smith of Bitcoin Depot to Robert Crockett of UNFI, as forwarded by Norm Neike of UNFI to Mr. Tomlinson that same day.

25. Defendant's actions towards Cash Cloud's hosts represent a significant threat to Cash Cloud's business, its customer relationships and its goodwill. Upon information and belief, Bitcoin Depot has successfully persuaded Cash Cloud host(s) to switch from Cash Cloud to Bitcoin Depot. Furthermore, the false statements contained in the communications from Bitcoin Depot to Cash Cloud's hosts may cause Cash Cloud's hosts to terminate their host contracts in the future or reconsider renewing or extending the host contracts.

26. Cash Cloud has invested substantial time and resources in building and cultivating its relationships with its hosts, the value of which cannot be reduced to a dollar figure and the loss of which would represent irreparable harm to Cash Cloud.

27. Defendant's activities go beyond the pale of fair and healthy competition in that Defendant used false and misleading statements in an attempt to lure Cash Cloud's kiosk hosts to break their contracts with Cash Cloud and to "partner" with Defendant instead.

28. Defendant's improper actions have caused actual disruption of the contractual relationship between Cash Cloud and its hosts.

/ / /

/ / /

8

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed March 21, 2023, in Las Vegas, Nevada.

*/s/ Christopher McAlary*
CHRISTOPHER MCALARY