BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
JEANETTE E. MCPHERSON, ESQ.
Nevada Bar No. 5423
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
          jmcpherson@foxrothschild.com
          nkoffroth@foxrothschild.com
          zwilliams@foxrothschild.com

JAMES J. JIMMERSON, ESQ.
Nevada Bar No. 000264
JAMES M. JIMMERSON, ESQ.
Nevada Bar No. 12599
**THE JIMMERSON LAW FIRM, P.C.**
415 South 6th Street, Suite 100
Las Vegas, Nevada 89101
Telephone:    (702) 388-7171
Facsimile:    (702) 380-6413
Email: jimmerson@jimmersonlawfirm.com
          jmj@jimmersonlawfirm.com

*Counsel for Debtor Cash Cloud Inc.*

Electronically Filed March 21, 2023

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| In re | Case No. BK-23-10423-mkn |
|---|---|
| CASH CLOUD, INC., dba COIN CLOUD, | Chapter 11 |
| Debtor. | |

1

143873401.1

| | |
|---|---|
| CASH CLOUD, INC., dba COIN CLOUD,<br><br>      Plaintiff,<br>v.<br><br>LUX VENDING, LLC d/b/a BITCOIN DEPOT,<br><br>      Defendant. | Adv. Case No. 23-01015-MKN<br><br>**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date: OST PENDING<br>Hearing Time: OST PENDING |

Cash Cloud, Inc. d/b/a Coin Cloud ("Cash Cloud," "Plaintiff," or "Debtor"), debtor and debtor-in-possession in the above-captioned Chapter 11 case (the "Chapter 11 Case"), by and through its undersigned counsel, Fox Rothschild LLP, and The Jimmerson Law Firm, P.C., hereby files this Motion for Preliminary Injunction (the "Motion"). This Motion is based upon the pleadings in this action, the following memorandum of points and authorities, the declaration of Christopher McAlary, the exhibits submitted herewith, and any arguments made by counsel during any hearing on the Motion.

Pursuant to Fed. R. Bankr. P. 7008 and Local Rule 7008, Cash Cloud consents to the entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

Dated this 21st day of March, 2023.

            **FOX ROTHSCHILD LLP**

            By: */sBrett A. Axelrod*
              BRETT A. AXELROD, ESQ.
              Nevada Bar No. 5859
              JEANETTE E. MCPHERSON, ESQ.
              Nevada Bar No. 5423
              NICHOLAS A. KOFFROTH, ESQ.
              Nevada Bar No. 16264
              ZACHARY T. WILLIAMS, ESQ.
              Nevada Bar No. 16023
              1980 Festival Plaza Drive, Suite 700
              Las Vegas, Nevada 89135

            and

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

143873401.1

**THE JIMMERSON LAW FIRM, P.C.**

JAMES J. JIMMERSON, ESQ.
Nevada Bar No. 000264
JAMES M. JIMMERSON, ESQ.
Nevada Bar No. 12599
415 South 6th Street, Suite 100
Las Vegas, Nevada 89101

*Counsel for Debtor Cash Cloud Inc.*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

3

143873401.1

**INDEX OF EXHIBITS**

| Exhibit | Exhibit Description |
|---|---|
| 1 | Kiosk Site Location Agreement between Defendant and Roja 2 LLC |
| 2 | August 31, 2022 letter from Peter Mantas, Esq. to Hon. Jaye Hooper, Judge of the Ontario Superior Court of Justice |
| 3 | February 8, 2023 email from Landon Thomas to Frank Schilling of Royal Farms |
| 4 | Redacted copy of the February 22, 2023 email from Todd Umstott, to Michael Tomlinson |
| 5 | Redacted copy of the March 10, 2023 email from Landon Thomas to Frank Schilling of Royal Farms |
| 6 | Redacted copy of the March 10, 2023 email from Mark Smith of Bitcoin Depot to Robert Crockett of UNFI |
| 7 | Declaration of Christopher McAlary in Support of the Motion |

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

143873401.1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This adversary proceeding centers on Defendant Lux Vending, LLC dba Bitcoin Depot's ("Defendant" or "Bitcoin Depot") malfeasance toward Plaintiff Cash Cloud Inc. Cash Cloud is a business that provides the general public the means to buy and sell digital currency (e.g., Bitcoin and other cryptocurrencies) using ATM-style digital currency kiosks. Cash Cloud's customers purchase digital currency by depositing cash (U.S. dollars) in Cash Cloud's kiosk, and receiving digital currency in the customer's digital currency wallet. In turn, Cash Cloud's customers sell digital currency by sending digital currency to Cash Cloud, and receiving the corresponding amount of cash from the kiosk. As of December 31, 2022, Cash Cloud operated approximately 4,800 kiosks throughout the United States and Brazil, installed in some of the largest convenience and grocery store chains as well as prestigious malls.

As detailed in the Complaint, Defendant is a direct competitor of Cash Cloud with similar ATM-style kiosks that it also seeks to place in retail stores for use by consumers. For months, Defendant has waged an improper campaign to harm Cash Cloud, through, among other things, interference with Cash Cloud's contractual relationships, deactivation of the software needed to operate Cash Cloud's kiosks, infringement on Cash Cloud's federally registered trademarks, and the use of unfair and deceptive trade practices in a wrongful effort to cause Cash Cloud's hosts to cease doing business with Cash Cloud.[1] It is this last example of Defendant's misconduct—wrongful efforts to interfere with Cash Cloud's contractual relationships with its hosts—that requires this Court's attention.

Since the filing of the bankruptcy petition on February 7, 2023, Defendant has been improperly attempting to take over Cash Cloud's host locations—host locations where Cash Cloud has exclusive rights to operate digital currency kiosks pursuant to various host contracts. Indeed, on

---

[1] In its Complaint, Cash Cloud has asserted the following claims for relief: (1) Temporary Restraining Order and Preliminary Injunctive Relief, (2) Violation of Automatic Stay, 11 U.S.C. § 362, (3) Violation of Lanham Act, 15 U.S.C. § 1125, (4) Consumer Fraud/Deceptive Trade Practices, (5) Tortious Interference with Contract – Host Agreements, (6) Tortious Interference with Contract – 2020 Purchase Agreement, (7) Intentional Interference with Prospective Business Relations, (8) Injurious Falsehoods, and (9) Defamation.

5

1  February 8, 2023, the day after the bankruptcy petition was filed, Defendant began contacting Cash
2  Cloud's hosts in an effort to persuade them to switch from Cash Cloud to Defendant.  In these
3  communications, Defendant made several material false statements concerning Cash Cloud.  This
4  effort by Defendant has not ceased.  As recently as March 10, 2023, Defendant has continued to
5  contact Cash Cloud's hosts, making even more false statements to them.  Defendant's efforts are
6  tortious, unlawful, and constitute a violation of the automatic bankruptcy stay.  Due to the critical
7  importance of Cash Cloud's host contracts, it host relationships, and its goodwill and reputation,
8  Cash Cloud seeks an injunction that would prevent Defendant from soliciting Cash Cloud's hosts or
9  otherwise making additional false statements to its hosts.  A preliminary injunction will preserve the
10 status quo to preserve the status quo through the resolution of this dispute.

## II. STATEMENT OF RELEVANT FACTS

As referenced above, Cash Cloud's business is centered on providing the general public the means to buy and sell digital currency (e.g., Bitcoin and other cryptocurrencies) using ATM-style digital currency machines ("DCMs").  Declaration of Christopher McAlary ("McAlary Decl.") at ¶ 4.  Cash Cloud's customers purchase digital currency by depositing cash (U.S. dollars) in Cash Cloud's DCM, and receiving digital currency in the customer's digital currency wallet.  In turn, Cash Cloud's customers sell digital currency by sending digital currency to Cash Cloud, and receiving the corresponding amount of cash from the DCM.  *Id*.

As of December 31, 2022, Cash Cloud operated approximately 4,800 DCMs, or kiosks, throughout the United States and Brazil, installed in some of the largest convenience, grocery and liquor store chains and prestigious malls.  *Id*. at ¶ 5.  To facilitate the installation of the Kiosks, Cash Cloud entered into numerous contracts or leases with various parties having retail locations (commonly referred to as "hosts"), including convenience stores, malls, and enterprise grocery stores.  *Id*. at ¶ 6.  The host contracts are essential to Cash Cloud's business as they establish the right for Cash Cloud to operate its kiosks at each location.  *Id*.

The terms in the host contracts vary.  *Id*. at ¶ 7.  However, in general, the terms provide that Cash Cloud is permitted to install a Kiosk at a certain location in exchange for compensation being paid to the host.  *Id*.  Cash Cloud has thousands of host contracts, and the nature and amount of

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

compensation varies and is sometimes in the form of a fixed monthly rental payment or a variable portion of the profit of the kiosk. *Id*. at ¶ 8. The host contracts typically have a 3 to 7-year term, with automatic renewals, unless terminated by either party.

Defendant is a direct competitor with Cash Cloud. *Id*. at ¶ 9. Defendant and Cash Cloud are two of the largest digital currency kiosk operators in the country. *Id*.

For several months, Defendant has engaged in unfair and deceptive trade practices to harm Cash Cloud. *Id*. at ¶ 14. For example, in August 2022, Defendant used its position with BitAccess, Inc. ("BitAccess," the company that, for years, had supplied the software needed to operate Cash Cloud's kiosks), to unilaterally (over the objection of BitAccess's officers and lawyer) deactivated the software provided to Cash Cloud, in derogation of the undertaking/representation made by BitAccess to a court in Canada that BitAccess would continue to provide the software to Cash Cloud. *See* Exhibit 2; McAlary Decl. at ¶ 14. Later in 2022, Bitcoin Depot wrongfully infringed on Cash Cloud's federally registered trademark, Coin Cloud, using the trademark to redirect internet traffic to Defendant's website. *Id*. at ¶ 15.

For years, Defendant has known that Cash Cloud had contracts with its hosts. *Id*. at ¶ 10. Defendant intended for that contractual relationship to be disrupted as a result of Defendant's statements to Cash Cloud's hosts. *Id*. It is customary in Cash Cloud's industry that digital currency kiosk operators such as Cash Cloud and Defendant enter into long term contracts. *Id*. at ¶ 11. On several occasions, Cash Cloud has been involved in competing for an enterprise host's business with Defendant, with the winning company earning host contract(s). *Id*. It is also customary in the industry for host contracts to contain exclusivity provisions which make the kiosk operator the exclusive provider of digital currency trading services on the host property. *Id*. Cash Cloud's host contracts contain such exclusivity provisions. *Id.* at ¶ 11. Upon information and belief, Defendant's host contracts contain exclusivity provisions. *See*, *e.g.*, Exhibit 1; McAlary Decl. at ¶ 12.

Cash Cloud has several "enterprise hosts" which have contracted with Cash Cloud to host thousands of Cash Cloud's kiosks. McAlary Decl. at ¶ 13. Three of such enterprise hosts are UNFI, Royal Farms, and 7-Eleven. *Id*. Cash Cloud intends to move forward with 722 kiosks located at UNFI locations, 219 kiosks located at Royal Farms locations, and 60 kiosks located at 7-Eleven

7

143873401.1

locations. *Id*. These three enterprise hosts alone represent nearly thirty percent of the kiosks intends to move forward with. *Id*.

After Cash Cloud's bankruptcy filing, Defendant engaged in a campaign to target Cash Cloud's hosts to replace Cash Cloud kiosks with Defendant's kiosks. *Id*. at ¶ 16. For example, Defendant made false and misleading statements to at least one of Cash Cloud's Kiosk hosts (Royal Farms) that Cash Cloud "was unable to reorganize its debts," implying that Cash Cloud was liquidating and ceasing its business operations, which is the exact opposite of the truth. *See* Exhibit 3; McAlary Decl. at ¶ 16. Defendant told the same Cash Cloud host that it "doesn't know what happens from a contractual standpoint between you all and Coin Cloud, but we're still highly interested in partnering with Royal Farms!" McAlary Decl. at ¶ 17.

Defendant told other hosts (7-Eleven locations) that Cash Cloud "is out of business" and that it "wanted to replace Cash Cloud's machines with [Defendant's] and take over the rent agreement." *See* Exhibit 4; McAlary Decl. at ¶ 18. These statements to the 7-Eleven hosts are false. McAlary Decl. at ¶ 19. Cash Cloud is not out of business. *Id*. Claiming that Cash Cloud is, wrongfully suggests that Cash Cloud will cease operating the kiosks on the host's property. *Id*.

Immediate injunctive relief is needed as Defendant's improper campaign against Cash Cloud is continuing. *Id*. at ¶ 20. On March 10, 2023 (the same day that the Complaint was filed), Defendant sent multiple emails to Cash Cloud hosts (UNFI and Royal Farms) seeking to take the business with that host away from Cash Cloud. *See* Exhibits 5, 6.

Several statements made by Defendant to Royal Farms in the March 10, 2023 email are false, including: (1) "the machines [are] online, but customers not receiving their crypto;" (2) "Coin Cloud [is] being completely unresponsive to the host after not being paid for months;" and (3) they [Cash Cloud] stated they will resume payments, do it for a month or two, and then stop paying the retailers again." McAlary Decl. at ¶ 22. These statements are false and dangerous to Cash Cloud's business. *Id*. A host who believes Defendant's false statements may switch to Bitcoin Depot fearing (1) a potential dispute with a customer who may not receive the cryptocurrency he/she purchased; (2) a non-responsive kiosk operator; and/or (3) that Cash Cloud would stop making host payments in the near future. *Id*. Indeed, the first false statement about customers no receiving the digital currency

8

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

143873401.1

they purchased is particularly harmful to Cash Cloud as it not only puts Cash Cloud's host relationships at risk, but also puts end-user relationships and Cash Cloud's goodwill at risk. *Id*. at ¶ 23.

Defendant's actions towards Cash Cloud's hosts represent a significant threat to Cash Cloud's business, its customer relationships and its goodwill. *Id*. at ¶ 25. Bitcoin Depot has successfully persuaded Cash Cloud host(s) to switch from Cash Cloud to Bitcoin Depot and have caused actual disruption of the contractual relationship between Cash Cloud and its hosts. *Id*. at ¶¶ 25, 28. Furthermore, the false statements contained in the communications from Bitcoin Depot to Cash Cloud's hosts may cause Cash Cloud's hosts to terminate their host contracts in the future or reconsider renewing or extending the host contracts. *Id*.

Furthermore, Cash Cloud has invested substantial time and resources in building and cultivating its relationships with its hosts, the value of which cannot be reduced to a dollar figure and the loss of which would represent irreparable harm to Cash Cloud. *Id*. at ¶ 26. Defendant's activities go beyond the pale of fair and healthy competition in that Defendant used false and misleading statements in an attempt to lure Cash Cloud's kiosk hosts to break their contracts with Cash Cloud and to "partner" with Defendant instead. *Id*. at ¶ 27.

## III. LEGAL ARGUMENT

### 1. Legal Standard for Issuing a Preliminary Injunction

In all cases, a district court should enter preliminary injunctive relief "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7, 22 (2008). Such a showing requires that plaintiff establish it is "likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20; *see also Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009) ("Under *Winter*, [parties] seeking a preliminary injunction must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest").

9

In evaluating the four factors, the court may apply a sliding-scale test, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

General legal authority concerning each of the four elements is set forth below.

### A.    Likelihood of Success on the Merits

"Under traditional legal standards, a moving party may become eligible to obtain a preliminary injunction by demonstrating a combination of probable success on the merits and the possibility of irreparable injury. At the very least, it must be shown as an irreducible minimum that there is a fair chance of success on the merits." *San Antonio Cmty. Hosp. v. S. California Dist. Council of Carpenters*, 125 F.3d 1230, 1234 (9th Cir. 1997) (citations omitted).  In other words, "[a] plaintiff is not required to demonstrate a certainty of success, but rather only a 'fair chance of success,' in order to obtain preliminary injunctive relief." *Fleetwash, Inc. v. Hall*, No. 3:17-cv-00170-MMD-VPC, 2017 WL 2193239, at *1 (D. Nev. May 18, 2017).

In an action for intentional interference with contractual relations, a plaintiff must establish: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage. *See WMCV Phase 3, LLC v. Shushok & McCoy, Inc.*, 750 F. Supp. 2d 1180, 1195 (D. Nev. 2010) (citing *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274, 71 P.3d 1264, 1267 (2003)).

To recover for a violation of the automatic stay, a plaintiff must show that (1) the defendant violated the stay imposed by the Bankruptcy Code, (2) the violation was willful, and (3) the plaintiff was injured by the violation. *See In re Paxton*, 596 B.R. 686 (Bankr. N.D. Cal. 2019).

### B.    Irreparable Harm

Irreparable harm includes "a viable threat of serious harm which cannot be undone." *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983) (internal citations omitted). "[E]conomic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award," but evidence of loss of goodwill is sufficient. *Las Vegas Sands Corp.*

143873401.1

*v. Fan Yu Ming*, 360 F. Supp. 3d 1072, 1079 (D. Nev. 2019) (citations omitted). Damage to customer relationships, loss of customer goodwill, and loss of business opportunities each may also constitute irreparable harm. *See*, *e.g.*, *Celsis In Vitro, Inc. v. CellzDirect, Inc*., 664 F.3d 922, 930 (Fed. Cir. 2012) (citations omitted).

### C. Balance of Hardships

Before issuing a preliminary injunction, a court must weigh "the competing claims of injury and … consider the effect on each party of the granting or withholding of the requested relief." *Las Vegas Sands Corp.*, 360 F. Supp. 3d at 1081 (quoting *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987)).

### D. Public Interest

"The public interest analysis for the issuance of a preliminary injunction requires [the court] to consider 'whether there exists some critical public interest that would be injured by the grant of preliminary relief.'" *Indep. Living Ctr. of So. Cal., Inc. v. Maxwell–Jolly*, 572 F.3d 644, 659 (9th Cir.2009) (quoting *Hybritech Inc. v. Abbott Lab*., 849 F.2d 1446, 1458 (Fed. Cir. 1988)).

## 2. The Court Should Issue a Preliminary Injunction

This case—involving an unambiguous violation of the automatic stay and tortious interference with contract and demonstrated bad faith by Defendant—is a textbook example of the appropriate issuance of a preliminary injunction. As described herein, a preliminary injunction should be entered because: (1) there is a likelihood that Cash Cloud will succeed on the merits of its claims; (2) Cash Cloud is likely to suffer irreparable harm without the issuance of the requested injunctive relief; (3) the balance of hardships greatly favors the issuance of the requested injunctive relief; and (4) the public interest would best be served by the issuance of the requested injunction.

### A. Cash Cloud is Likely to Succeed on the Merits of Its Claim for Violation of the Automatic Stay.

To recover for a violation of the automatic stay, a plaintiff must show that (1) the defendant violated the stay imposed by the Bankruptcy Code, (2) the violation was willful, and (3) the plaintiff was injured by the violation. *See In re Paxton*, 596 B.R. 686. Each of these elements are satisfied here. In working to have Cash Cloud's hosts switch from hosting Cash Cloud's kiosk to hosting

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Defendant's kiosks, Defendant is violating the automatic stay as such conduct constitutes an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" § 362(a)(3).

It is black letter law that Cash Cloud's executory contracts with its hosts (which contain, inter alia, exclusivity provisions in favor of Cash Cloud), constitute property of the estate which is protected by the automatic stay. *See*, *e.g.*, *In re Lehman Bros. Holdings Inc.*, 544 B.R. 16, 40 (Bankr. S.D.N.Y. 2015) ("A debtor's security interest in collateral or a debtor's interest in an executory contract as of the commencement of the case comprises property of the estate."); *In re Family Health Services, Inc.*, 105 B.R. 937, 942-43 (Bankr. C.D. Cal. 1989) ("the debtor's good will and its contracts with subscribers and members are so essential to the survival of the debtor that they constitute property of the estate as that term is defined in Bankruptcy Code section 541(a)(1)"); *In re HMH Motor Services, Inc.*, 259 B.R. 440, 451 (Bankr. S.D. Ga. 2000) ("It also includes intangible assets of the debtor such as relationships with customers and parties dealing with the debtor, goodwill, and telephone numbers used by the debtor.").

Consequently, when Defendant is interfering with Cash Cloud's current contractual relationships or is otherwise soliciting Cash Cloud's hosts in an effort to have the hosts replace Cash Cloud kiosks with Defendant's kiosks, such conduct constitutes a willful violation of the bankruptcy stay. *See In re All Trac Transp., Inc.*, 306 B.R. 859, 880-81 (Bankr. N.D. Tex. 2004); *In re Sherlock Homes of W.N.Y, Inc.*, 246 B.R. 19 (Bankr. W.D.N.Y. 2000).

Finally, Cash Cloud has been damaged by Defendant's violation of the bankruptcy stay. Cash Cloud has already suffered breaches of its host agreements as certain hosts are switching from Cash Cloud's kiosks to Defendant's kiosks. McAlary Decl. at ¶ 25. Further, Defendant's false statements made to hosts are harmful to Cash Cloud's business as they incentivize other hosts to break their agreements with Cash Cloud. *Id*. at ¶

**B.     Cash Cloud is Likely to Succeed on the Merits of Its Claim for Tortious Interference with Contract – Host Agreements.**

In an action for intentional interference with contractual relations, a plaintiff must establish: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts

143873401.1

intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage. *See WMCV Phase 3, LLC v. Shushok & McCoy, Inc.*, 750 F. Supp. 2d 1180, 1195 (D. Nev. 2010) (citing *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274, 71 P.3d 1264, 1267 (2003)). The evidence before the Court establishes each and every element of this claim.

At the outset, there should be no dispute as to the first two elements of the claim for tortious interference with contract. There exist valid contracts between Cash Cloud and its hosts. *See* McAlary Decl. at ¶¶ 8-11, 13. Further, Defendant had knowledge of the contracts. *Id*. at ¶¶ 10-11.

There is substantial evidence to establish the third element, that Defendant engaged in intentional acts intended or designed to disrupt the contractual relationship. The day after Cash Cloud filed for bankruptcy, Defendant's agents were contacting Cash Cloud's hosts seeking to take the business away from Cash Cloud. *See* Exhibit 3. In this communication, Defendant attempted to mislead the Royal Farms host into believing that Cash Cloud was liquidating and ceasing its business operations, claiming that Cash Cloud "was unable to reorganize its debts." *Id*.; McAlary Decl. at ¶ 16. Confirming that Defendant's intent was to take Cash Cloud's contractually exclusive hosts away, the February 8, 2023 email concluded with, "[Defendant] "doesn't know what happens from a contractual standpoint between you all and Coin Cloud, but we're still highly interested in partnering with Royal Farms!" Exhibit 3; McAlary Decl. at ¶ 17.

This misconduct continued. On March 10, 2023, Defendant's agents once again contacted Royal Farms in an effort to take Cash Cloud's business from it (and using false and misleading statements to achieve such an end). *See* Exhibit 5. Indeed, several statements made by Defendant's agent to Royal Farms in the March 10, 2023 email are false, including: (1) "the machines being online, but customers not receiving their crypto;" (2) "Coin Cloud being completely unresponsive to the host after not being paid for months;" and (3) they [Cash Cloud] stated they will resume payments, do it for a month or two, and then stop paying the retailers again." *Id*.; McAlary Decl. at ¶ 22. Similar improper efforts were made to take the business involving 7-Eleven locations and UNFI locations. *See* McAlary Decl. at ¶¶ 18-19; 20; 24; Exhibits 4, 6.

Finally, Cash Cloud can establish the fourth and fifth elements of the claim for intentional interference with contract: (4) actual disruption of the contract and (5) resulting damage. As a result

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

143873401.1

of Defendant's improper actions, Bitcoin Depot has successfully persuaded Cash Cloud host(s) to switch from Cash Cloud to Bitcoin Depot. McAlary Decl. at ¶¶ 25; 28. The damages are substantial. In addition to the lost revenue, Defendant's interference has put Cash Cloud's host relationships at risk, but also has imperiled Cash Cloud's relationships with its end-user and its goodwill. *Id*. at ¶ 23. Accordingly, the Court should find that Cash Cloud is likely to succeed on the merits of its claim for tortious interference with contract.

### C. Cash Cloud Is Likely to Be Irreparably Harmed Unless a Preliminary Injunction is Issued.

Cash Cloud's contractual relationships with its hosts are essential to its business as they establish the right for Cash Cloud to operate its kiosks at each of its locations. *Id*. at ¶ 6. Demonstrating the importance of these contracts is Cash Cloud's repeated negotiation for the exclusive right to operate the kiosks. *Id*. at ¶ 11. Should Defendant be able to continue its course of conduct in improperly soliciting Cash Cloud's hosts, Cash Cloud will suffer irreparable harm. Indeed, already Defendant has caused interruption of the contractual relationship between Cash Cloud and its hosts. *Id*. at ¶25, 28. Defendant has caused hosts to switch from hosting Cash Cloud machines to Defendant's machines. *Id*. at ¶ 25. Further, Defendant's false statements concerning Cash Cloud are harmful and dangerous to Cash Cloud's business, its goodwill, and its customer relationships. *Id*. at ¶ 22. Indeed, and by way of example only, Defendant's false statement that Cash Cloud is not sending customers their purchased digital currency is particularly harmful as it not only puts Cash Cloud's host relationships at risk, but also puts end-user relationships and Cash Cloud's goodwill at risk. *Id*. at ¶ 23.

Under such circumstances, courts routinely grant injunctive relief to prevent such irreparable harm. *See*, *e.g.*, *Fleetwash, Inc.*, 2017 WL 2193239, at *2 ("Defendants' conduct will result in irreparable harm to Plaintiff in the form of losing customers and reputational harm that monetary damage alone cannot address if MTW is allowed to benefit."); *INAG, Inc. v. Richar, Inc.*, No. 2:16-cv-722, 2017 WL 4273103, at *5 (D. Nev. September 25, 2017) ("The Court finds that absent an injunction there would be irreparable harm to the professional reputation and prospective professional relationships of Richar, Inc."). Without an injunction, Defendant will continue its

14

143873401.1

improper campaign against Cash Cloud, harming Cash Cloud's customer relationships, its goodwill and reputation.

### D. The Balance of Hardships Weighs Heavily in Cash Cloud's Favor.

As explained above, without a preliminary injunction that would prohibit Defendant from continuing to solicit Cash Cloud's hosts, through the use of false statements or otherwise, Cash Cloud loses the benefit of the automatic stay and Cash Cloud's valuable exclusive contracts with its hosts. On the other hand, Defendant would not be put at risk by the issuance of a preliminary injunction. Simply put, Defendant would be playing by the same rules that everyone else is expected to follow.

### E. The Public Interest Supports Jump's Request for Injunctive Relief.

There is no "critical public interest" that would be injured if Defendant were prohibited from violating the automatic stay or otherwise soliciting Cash Cloud's hosts. *See Indep. Living Ctr. Of So. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d at 659. In fact, the public interest is best served by preserving the integrity of the automatic stay and to prevent the use of false statements to solicit business from Cash Cloud's hosts. *See, e.g., INAG, Inc*, 2017 WL 4273103, at *6.

## IV. CONCLUSION

Based upon the foregoing, Cash Cloud respectfully requests that the Court find that a preliminary injunction is necessary and should be issued to enjoin Defendant from violating the automatic stay by soliciting Cash Cloud's hosts (through the use of false statements or otherwise).

Dated this 21st day of March, 2023.

**FOX ROTHSCHILD LLP**

*/s/ Brett A. Axelrod, Esq.*
BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
JEANETTE E. MCPHERSON, ESQ.
Nevada Bar No. 5423
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135

and

15

143873401.1

|   |   |
|---|---|
| 1 | **THE JIMMERSON LAW FIRM, P.C.** |
| 2 | JAMES J. JIMMERSON, ESQ.<br>Nevada Bar No. 000264 |
| 3 | JAMES M. JIMMERSON, ESQ.<br>Nevada Bar No. 12599 |
| 4 | 415 South 6th Street, Suite 100<br>Las Vegas, Nevada 89101 |
| 5 | *Counsel for Debtor Cash Cloud Inc.* |

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

16

143873401.1