1    CARLTON FIELDS, P.A.
Adam Schwartz, Esq. (*Admitted Pro Hac Vice*)
2    Email: aschwartz@carltonfields.com
John J. Lamoureux, Esq. (Admitted *Pro Hac Vice*)
3    Email: jlamoureux@carltonfields.com
Corporate Center Three at International Plaza
4    4221 W. Boy Scout Boulevard, Suite 1000
Tampa, Florida  33607-5780
5    Telephone: 813/223-7000
Facsimile: 813/229-4133
6
HOLLEY DRIGGS
7    Stacy H. Rubin, Esq. (NV Bar No. 9298)
Email: srubin@nevadafirm.com
8    300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
9    Telephone: 702/791-0308
Facsimile: 702/791-1912
10
*Attorneys for Lux Vending, LLC d/b/a Bitcoin Depot*
11

12                **UNITED STATES BANKRUPTCY COURT**

13                      **DISTRICT OF NEVADA**

| | |
|---|---|
| 14  In re: | Case No. 23-10423-MKN |
|  | Chapter 11 |
| 15  CASH CLOUD, INC., dba COIN CLOUD, | |
| 16            Debtor. | |
| 17  CASH CLOUD, INC., dba COIN CLOUD, | Adv. No. 23-01015-MKN |
| 18            Plaintiff, | **DEFENDANT LUX VENDING, LLC d/b/a BITCOIN DEPOT'S OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER** |
| 19  v. | |
| 20  LUX VENDING, LLC d/b/a BITCOIN DEPOT, | Date of Hearing:     April 20, 2023 |
| 21 | Time of Hearing:     10:30 a.m. |
| 22            Defendant. | Judge: Hon. Mike K. Nakagawa |

23

24        Defendant Lux Vending, LLC d/b/a Bitcoin Depot ("Bitcoin Depot"), by and through

25    counsel Adam P. Schwartz and John J. Lamoureux of the law firm Carlton Fields, P.A., and Stacy

26    H. Rubin of the law firm Holley Driggs, hereby opposes *Plaintiff's Motion for Temporary*

27

28

15482-01/132624059_2 132624059.2

1    *Restraining Order* [ECF No. 5][1] (the "Motion") filed by Cash Cloud, Inc., dba Coin Cloud ("Cash

2    Cloud" or "Plaintiff").  Bitcoin Depot files this *Opposition to Plaintiff's Motion for Temporary*

3    *Restraining Order* ("Opposition"), as Cash Cloud fails to carry its burden to satisfy the standard

4    for the issuance of a temporary restraining order and thus fails to establish that extraordinary relief

5    is warranted.

6              This Opposition is supported by the Memorandum of Points and Authorities herein; the

7    papers and pleadings on file in this Adversary Proceeding, judicial notice of which is respectfully

8    requested pursuant to FED. R. EVID. 201(b) and (c)(2) and 1101(1) and (b); the Declaration of Scott

9    Buchanan ("Buchanan Decl.") filed concurrently herewith pursuant to Local Rules of Bankruptcy

10   Practice of the United States District Court for the District of Nevada ("LR") 9014(c); and any

11   argument and evidence the Court may entertain at hearing on the Motion.[2]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    JURISDICTION

14            Bitcoin Depot consents to the entry of a final order by the bankruptcy judge as to the

15   Motion for Temporary Restraining Order if it is determined that the bankruptcy judge, absent

16   consent of the parties, cannot enter final orders or judgment consistent with Article III of the United

17   States Constitution.

### II.    INTRODUCTION

19            Plaintiff seeks a temporary restraining order based upon a single declaration from

20   Christopher McAlary[3] (the "McAlary Declaration") [ECF No. 5-7] containing hearsay and based

---

[1] All references to "ECF No." are to the numbers assigned to the documents filed in the adversary proceeding identified in the caption above ("Adversary Proceeding"), as they appear on the docket ("Docket") maintained by the Clerk of the Court of the United States Bankruptcy Court for the District of Nevada.

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 01–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references if any are to the Federal Rules of Civil Procedure.

[3] Bitcoin Depot objects to the McAlary Declaration in support of the Motion as it contains inadmissible hearsay (FRE 802), lacks evidence of foundation and personal knowledge (FRE 602), and has not been properly authenticated (FRE 901(a)).  For example, the declarant frequently states "[u]pon information and belief" but fails to identify what information he is relying upon, and upon what basis he believes it. *See, e.g.*, McAlary Decl. ¶¶ 10, 12, 14, 25. As another example, the declaration does not disclose how Exhibit 3 attached to the McAlary Declaration came to be in his

1    upon information and belief.  As discussed in further detail below, Plaintiff has not made a

2    threshold showing under the relevant standard and the Motion contains an inaccurate recitation of

3    events.  This Court should therefore deny Cash Cloud's Motion for Temporary Restraining Order

4    in its entirety.

5                          III.    **RELEVANT FACTS**

6            Bitcoin Depot operates digital currency kiosks and provides its users with a convenient

7    means of converting cash into cryptocurrency.  *See* Buchanan Decl. ¶ 5.  The Motion contends that

8    Plaintiff operates digital currency machines ("Kiosks") hosted in various retailers and retail chains.

9    Motion at 6:14-19.  The Kiosks act as digital currency ATMs, offering currencies by (i) depositing

10   cash into a Kiosk and receiving digital currency in a digital currency wallet and (ii) selling digital

11   currency to Plaintiff and receiving its value in cash from the Kiosk. *Id.* Plaintiff installs Kiosks in

12   retail locations by entering into contracts or leases with the host retailers. *Id.* at 6:20-26. The terms

13   of the contracts/leases vary, but "in general, the terms provide that Cash Cloud is permitted to

14   install a Kiosk at a certain location in exchange for compensation … in the form of a fixed monthly

15   rental payment or a variable portion of the profit of the Kiosk … for a 3 to 7-year term." *Id.* at

16   6:27-7:3 (citations omitted).

17           The Kiosks required software to operate.  *Id.* at 7.  Although not discussed in the Motion,

18   Plaintiff purchased instances of Licensed Software from BitAccess, Inc. ("BitAccess") for that

19   operation.  Compl. ¶ 29.  As alleged in the Complaint, Plaintiff entered into two contracts with

20   BitAccess – (i) a 2015 Purchase Agreement for BitAccess Kiosks, instances of the Licensed

21   Software, and software support services; and (ii) a 2020 Purchase Agreement that amended the

22   2015 Purchase Agreement "to reflect the fact that [Plaintiff] had scaled significantly since the 2015

23   Purchase Agreement." *Id.* ¶¶ 24-25, 35-36.  In 2017, BitAccess shifted from offering Kiosks and

24

25   _____

     possession (as he is not a sender or recipient of the email), and he does not have personal
26   knowledge that the email is accurate.  The emails are also inadmissible hearsay for which no
     exception is offered.  *See Duhn Oil Tool v. Cooper Cameron Corp.,* 757 F. Supp. 2d 1006, 1012
27   (E.D. Cal. 2010) ("Mr. Tobin has not laid the foundation to admit this information as a business
     record under Rule 803(6), Federal Rules of Evidence … if Cameron is presenting a compilation,
28   summary, or abstract of business records, it must lay the proper foundation. Duhn's objections to
     Mr. Tobin's declaration are sustained").

15482-01/132624059_2  1  32624059.2

1    Licensed Software to focusing on the development and sale of its software. *Id.* ¶ 33.  Accordingly,

2    Plaintiff "began purchasing kiosks from other manufacturers," but "continued to acquire instances

3    of the Licensed Software from BitAccess" and use BitAccess' Support Services. *Id.* ¶¶ 34, 40.

4    Both contracts granted Plaintiff "a perpetual, royalty-free license to use the Licensed Software"

5    with limited termination rights. *Id.* ¶¶ 27, 38-39. According to the Complaint, Bitcoin Depot

6    "began acquiring an ownership interest in BitAccess in 2021." On August 25, 2022, a merger

7    involving Bitcoin Depot and BitAccess was disclosed in an SEC Form 8-K. *Id.* ¶¶ 59-60.

8        The Complaint alleges that on August 4, 2022, BitAccess' Chief Operations Officer,

9    Andrew McDonald, notified Plaintiff of BitAccess' intent to terminate the 2020 Purchase

10   Agreement within 14 days, resulting in the deactivation of the Licensed Software on Plaintiff's

11   kiosks on August 18, 2022. *Id.* ¶¶ 42-43.  Facing deactivation of the software, on August 11, 2022,

12   Plaintiff filed a Notice of Application against BitAccess in the Ontario [Canada] Superior Court

13   of Justice (the "Canadian Litigation") and five days later filed a Notice of Arbitration with the

14   Canadian Arbitration Association (the "Canadian Arbitration). *Id.* ¶¶ 49-50.  On August 18, 2022,

15   BitAccess deactivated the Licensed Software on Plaintiff's Kiosks.  *Id.* ¶ 53.  At a hearing the

16   same day, the Canadian Court required BitAccess to re-activate the software, which it did that day.

17   *Id.* ¶¶ 54-56.  "Upon information and belief," Plaintiff contends Bitcoin Depot used its position

18   with BitAccess to deactivate the Licensed Software on Plaintiff's Kiosks.  McAlary Decl. ¶ 14;

19   *see also* Motion at 7:8-13.

20       The Complaint and Motion are silent as to the duration of the deactivation or any further

21   action or resolution in the Canadian Litigation, leaving for this Court a significant gap in the history

22   of the software deactivation prior to the filing of Plaintiff's bankruptcy petition on February 7,

23   2023, *see* McAlary Decl. ¶ 15.[4]  Instead, the Complaint and Motion omit this relevant history and

24   the fact that Plaintiff lost its case in Canada.  *See* Exhibit A to Bitcoin Depot's contemporaneous

25   Request for Judicial Notice, *October 4, 2022 Reasons for Decision by Judge Hooper in Canadian*

26

27

---

28   [4] The software was deactivated from August 30, 2022, to September 1, 2022, a period of fewer than forty-eight (48) hours.

- 4 -

1    *Litigation* at 4, para. 21 (citing BitAccess' Chief Operations Officer's August 4, 2022 letter

2    incorporated by reference in paragraphs 43-44 of the Complaint).[5]

3          On October 4, 2022, the Canadian Court dismissed Plaintiff's application for an injunction

4    restraining BitAccess from deactivating the software. Ex. A ¶ 62. The Canadian Court

5    acknowledged that Bitcoin Depot "deactivated the software on August 30, 2022," which

6    necessitated an emergency hearing on September 1, 2022, during which the Canadian Court

7    ordered the software to be reactivated, and the software was reactivated.  Ex. A ¶ 4.  The Canadian

8    Court noted that by October 2022, Plaintiff had already replaced the Kiosk software with its own

9    software on 25% of its Kiosks.  *Id.* ¶ 48.  The Canadian Court found the fact that Plaintiff was

10   "already in the process of replacing BitAccess' software" balanced any "threat that immediate

11   deactivation pose[d] to Plaintiff's current operation." *Id.* ¶ 60.  The Canadian Court further noted,

12   "To grant the injunction as sought … would, in effect, allow [Plaintiff] to continue to replace

13   BitAccess' software on its machines while, at the same time, force BitAccess to devote time and

14   resources to service and support those kiosks that remain."  *Id.*   Remarkably, Plaintiff fails to

15   provide any of this detail in its Complaint and Motion.

16         Plaintiff further asserts that Bitcoin Depot infringed on Plaintiff's trademark "Coin Cloud"

17   to misdirect internet traffic to the Bitcoin Depot website rather than Plaintiff's website.  Motion at

18   7:13-15; McAlary Decl. ¶ 15.  However, as seen in the image on page 7 of the McAlary Declaration

19   and page 16 of the Complaint, an internet search of Cash Cloud's trademark "Coin Cloud"

20   produced the Sponsored Link to https.www.bitcoindepot.com.  It must be noted that such "mere

21   diversion" does not rise to the level of "confusion" required under the Lanham Act.  "Due to the

22   separate and distinct nature of the links created on any of the search results pages in question,

23   potential consumers have no opportunity to confuse defendant's services, goods, advertisements,

24   links or Web sites for those of plaintiff."  *J.G. Wentworth, S.S.C. Ltd. Partn. v. Settle. Funding*

25   *LLC*, 2007 WL 30115 at *8 (E.D. Pa. Jan. 4, 2007).  In other words, because of the clear labeling

---

[5] Bitcoin Depot requests that this Court take judicial notice of this October 4, 2022 Order from the
Canadian Litigation, under FED. R. EVID. 201.  A true copy of the October 4, 2022 Order from the
Canadian Litigation is attached to *Defendant Lux Vending LLC D/B/A Bitcoin Depot's Request
For Judicial Notice* contemporaneously filed herein, as **Exhibit A**.

- 5 -

1  of the Bitcoin Depot website in the Sponsored Link, there is no likelihood of confusion, and

2  consequently, no liability for trademark infringement under the Lanham Act as a matter of law.

3  ## IV.    LEGAL STANDARD

4  The same legal standard applies to both temporary restraining orders and preliminary

5  injunctions sought pursuant to Federal Rule of Civil Procedure 65.  *See Stuhlbarg Int'l Sales Co.*

6  *v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that the analysis applied to

7  temporary restraining orders and preliminary injunctions is "substantially identical").    A

8  preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing

9  that the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7,

10  24 (2008).  A court may grant such relief only upon a petitioner's showing of (1) likelihood of

11  success on the merits, (2) likelihood of irreparable harm in the absence of preliminary relief, (3)

12  the balance of equities weighs in petitioner's favor, and (4) an injunction is in the public

13  interest.  *Id.* at 20.  A temporary restraining order is distinguished by its "underlying purpose of

14  preserving the status quo and preventing irreparable harm just so long as is necessary to hold a

15  hearing, and no longer."  *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck*

16  *Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

17  ## V.    ARGUMENT

18  **A.    A Temporary Restraining Order Is Not Justified**

19  **1.    Cash Cloud Fails to Establish a Likelihood of Success on the Merits for
20  Tortious Interference with Contract – Host Agreements**

21  "To state a claim for intentional interference with contractual relations, a plaintiff must

22  show '(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3)

23  intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption

24  of the contract; and (5) resulting damage.'"  *WMCV Phase 3, LLC v. Shushok & McCoy, Inc.,* 750

25  F. Supp.2d 1180, 1195 (D. Nev. 2010) (citing *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274, 71

26  P.3d 1264, 1267 (Nev. 2003)).

27

28

- 6 -

15482-01/132624059_2  1  32624059.2

1      Cash Cloud fails to present the necessary evidence to succeed on the merits of a claim for

2  tortious interference for two reasons:   (1) failure to show actual disruption of any Host Agreements

3  and (2) failure to show <u>any</u> resulting damage from the alleged interference.

4                  **a.      Cash Cloud fails to show actual disruption with any Host Agreements**

5      Cash Cloud fails to identify any specific Host Agreement that Bitcoin Depot actually

6  disrupted.  Instead, it makes only the blanket statement that "[t]here is substantial evidence to

7  establish . . . that Bitcoin Depot engaged in intentional acts intended or designed to disrupt the

8  contractual relationship[s]." *See* Motion at 13:16-17.  But again, Cash Cloud fails to show any

9  actual disruption to its contracts.  *See generally,* Motion at 13-14.  In fact, Cash Cloud's only

10  evidence that "Bitcoin Depot has successfully persuaded Cash Cloud host(s) to switch from Cash

11  Cloud to Bitcoin Depot []" is only known upon "information and belief."  *See* Motion at 14:7-10;

12  *see also* McAlary Decl. ¶ 25.  Cash Cloud fails to identify a single host that switched from Cash

13  Cloud to Bitcoin Depot.  Cash Cloud is certainly aware of the identity of its kiosk hosts.  In the

14  bankruptcy matter, Cash Cloud moved to reject thousands of contracts with its kiosk hosts.  There

15  are no citations, documents, or any other evidentiary support for Cash Cloud's sweeping

16  allegations that Bitcoin Depot caused any actual disruption with its Host Agreements. *See*

17  Buchanan Decl. ¶ 6.

18      Cash Cloud is unlikely to succeed on the merits of its claim for tortious interference

19  because it fails to show any actual disruption of its Host Agreements; therefore, the Court should

20  deny the Motion.

21

22                  **b.      Cash Cloud fails to show any damages from the alleged
interference with its Host Agreements**

23      Intent to disrupt is, by itself, not enough to succeed on a claim for tortious interference.

24  *See J.J. Indus., LLC*, 119 Nev. at 274, 71 P.3d at 1267.  To succeed on a claim for tortious

25  interference, a plaintiff must also show "resulting damages" from the intended disruption of a

26  contract.  *See id.*

27      Here, it is Cash Cloud's burden to show "resulting damage" from the alleged interference.

28  *Id.* Cash Cloud fails to meet that burden because, as noted *supra*, Cash Cloud's only evidence that

- 7 -

1    "Bitcoin Depot has successfully persuaded Cash Cloud host(s) to switch from Cash Cloud to

2    Bitcoin Depot[]" is only known upon "information and belief." *See* Motion at 14:7-10; *see also*

3    McAlary Decl. ¶ 25.  Cash Cloud has provided no evidence to demonstrate that it has suffered

4    actual damages.  Instead, Cash Cloud is asking the Court to issue a temporary restraining order,

5    without evidence, as to damages.

6    　　　　Because Cash Cloud fails to show any actual damages from the alleged interference with

7    its Host Agreements, it is unlikely to succeed on the merits of its claim for tortious interference;

8    thus, the Court should deny the Motion.

9
10    　　　　**2.**　　　**Cash Cloud Fails to Establish a Likelihood of Irreparable Harm to Justify a Temporary Restraining Order**

11    　　　　"'Perhaps the single most important prerequisite for the issuance of a preliminary

12    injunction is a demonstration that if it is not granted the applicant is likely to

13    suffer irreparable harm before a decision on the merits can be rendered . . .'" *Skinvisible Pharm.*

14    *Inc. v. Sunless Beauty, Ltd.*, Case No.: 2:11-cv-1597 JCM, 2012 WL 1032549 at *2 (D. Nev. Mar.

15    27, 2012) (quoting C. Wright, A. Miller & M. Kane, FED. PRACTICE AND PROCEDURE § 2948.1,

16    p. 139 (2d ed.1995).  Indeed, for instances where a movant fails to establish irreparable harm,

17    courts have declined to even consider the other remaining factors.  *Cf. Reuters Ltd. v. United Press*

18    *Intern., Inc.*, 903 F.2d 904, 907 (2d Cir.1990*); Talk to Mr. Products, Inc. v. Lanard Toys, Inc.*, 24

19    U.S.P.Q.2d (BNA) 1798, 1800, 1992 WL 266930 (E.D.N.Y.1992).  Furthermore, in the event

20    monetary damages are an available remedy for the movant, injunctive relief is not available.  *See*

21    *Lydo Enter., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir.1984) (explaining that if

22    money damages or other relief granted in the ordinary course of litigation can adequately

23    compensate the plaintiff, irreparable injury probably will not follow the denial of a preliminary

24    injunction); *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d

25    1197, 1202 (9th Cir.1980) (noting that purely monetary injuries normally are not considered

26    irreparable).

27    　　　　Cash Cloud has not satisfied its burden to demonstrate irreparable harm for the same

28    reasons that it has not shown a likelihood of success on the merits of its claim for tortious

- 8 -

1    interference:  Cash Cloud has not shown actual disruption of a contract or resulting damages.  *See*

2    *supra.*  Cash Cloud's Motion is premised on asking this Court to make a finding of fact based on

3    "information and belief" rather than offering evidence to show actual disruption of a contract or

4    damages.  The McAlary Declaration lacks evidence; specifically, where he has indicated, "[u]pon

5    information and belief, Bitcoin Depot has successfully persuaded Cash Cloud host(s) to switch

6    from Cash Cloud to Bitcoin Depot."  *See* Motion at 14:7-10; *see also* McAlary Decl. ¶ 25.  Thus,

7    Cash Cloud has not satisfied the required burden to demonstrate that it has been irreparably harmed

8    by Bitcoin Depot.[6]

9         Cash Cloud fails to show evidence of any irreparable harm; therefore, the Court should

10    deny the Motion.

11              **a.**        **Balance of Equities**

12         Cash Cloud argues that the balance of the equities supports the Court issuing a temporary

13    restraining order because Bitcoin Depot "would not be put at risk by the issuance of a temporary

14    restraining order."  *See* Motion at 15:13-14.  This argument, however, completely ignores the

15    required burden on Cash Cloud to show that a temporary restraining order is warranted.  Cash

16    Cloud fails to meet its burden.  That failure alone is sufficient for the Court to deny Cash Cloud's

17    request for a temporary restraining order.

18         Additionally, it would be severely inequitable to Bitcoin Depot if the Court granted a

19    temporary restraining order, as Cash Cloud has not shown that it is likely to succeed on the merits

20    of a tortious interference claim, nor has it shown that it will be irreparably harmed absent a

21    temporary restraining order.  As such, the Court should deny the Motion.

22              **b.**        **Public Interest**

23         "When the reach of an injunction is narrow, limited only to the parties, and has no impact

24    on non-parties, the public interest will be at most a neutral factor in the analysis rather than one

25

26

---

27    [6] But even if Cash Cloud has satisfied its burden, which it has not, a temporary restraining order
is still inappropriate because, as the Ninth Circuit has clearly stated, monetary damages for the
alleged contractual interference would be a sufficient remedy.  *See Lydo Enter., Inc.*, 745 F.2d at
28    1213.

- 9 -

1    that favor[s] in [granting or] denying the preliminary injunction.*"* *Stormans, Inc. v. Selecky*, 586

2    F.3d 1109, 1138-39 (9th Cir. 2009) (internal quotation marks omitted).

3        In deciding whether to grant equitable relief, courts should consider and balance private

4    and public interests whenever public interests are implicated. *Register.com, Inc. v. Verio, Inc.*,

5    356 F.3d 393, 424 (2d Cir. 2004). However, disputes over private contracts between private

6    parties, like the one here, generally do not imply public interest. *Tiger Century Aircraft v. Calspan*

7    *Corp.,* 2009 WL 3486360 at \*3 (E.D. Cal. Oct. 23, 2009) ("The public interest is not directly

8    implicated in this private party dispute over private contract and business rights.").

9        Here, there is no persuasive argument that the public interest would be served in granting

10    Cash Cloud's temporary restraining order. Therefore, the Court should deny Cash Cloud's Motion.

11

12                **3.**      **Cash Cloud Fails to Establish a Likelihood of Success on the Merits for Violation of Automatic Stay**

13        Cash Cloud alleges a violation of Section 362(a)(3), applicable to all entities of "any act to

14    obtain possession of property of the estate or of property from the estate or to exercise control over

15    property of the estate." 11 U.S.C. § 362(a)(3). Influencing a customer to opt for a competitor's

16    service over a debtor's service through advertisements, false or otherwise, is <u>not</u> an act of control

17    over the bankruptcy estate's property. *See In re Windstream Holdings, Inc.*, 2022 WL 5245633 at

18    \*7-\*9 (S.D.N.Y. Oct. 6, 2022) (holding that advertisements, even false advertisements, without

19    more, cannot reasonably be seen as an act to exercise control over property of the bankruptcy

20    estate, even assuming that the debtor had executory contracts with its customers and that its

21    goodwill in the marketplace was protected by the automatic stay). In *In re Windstream*, the court

22    noted that unless a competitor goes beyond mere advertising, such as misusing proprietary

23    information or misrepresenting its identity to the debtor's customers, advertising alone (whether

24    false or otherwise) is not an act of control over the bankruptcy estate's property. *Id.* Because the

25    Motion merely alleges that Bitcoin Depot advertised its services over Plaintiff's, Cash Cloud fails

26    to demonstrate success on the merits of this claim. Bitcoin Depot's actions were nothing more

27    than ordinary course commercial conduct. Normal commercial conduct is not a violation of the

28

15482-01/132624059_2  1  32624059.2

1    automatic stay.  *See id.*; *In re Trump Entm't Resorts Inc.*, 534 B.R. 93, 104-05 (Bankr. D. Del.

2    2015); *Allentown Ambassadors, Inc.*, 361 B.R. 422, 439-40 (Bankr. E.D. Pa. 2007)).

3         Accordingly, Plaintiff fails to establish by clear and convincing evidence, that Bitcoin

4    Depot acted without an objectively reasonable basis to warrant such a finding.

5
           **4.      Cash Cloud Fails to Establish a Likelihood of Irreparable Harm to Justify a**
6          **Temporary Restraining Order for Violation of the Automatic Stay**

7         "'Perhaps the single most important prerequisite for the issuance of a preliminary

8    injunction is a demonstration that if it is not granted the applicant is likely to

9    suffer irreparable harm before a decision on the merits can be rendered . . .'" *Skinvisible Pharm.*

10   *Inc.*, 2012 WL 1032549 at *2 (quoting C. Wright, A. Miller & M. Kane, FED. PRACTICE AND

11   PROCEDURE § 2948.1, p. 139 (2d ed.1995).  Furthermore, in the event monetary damages are an

12   available remedy for the movant, injunctive relief is not available.  *See Los Angeles Memorial*

13   *Coliseum Comm'n*, 634 F.2d at 1202 (noting that purely monetary injuries normally are not

14   considered irreparable).

15        Plaintiff fails to show that it cannot be compensated by monetary damages if a valid claim

16   and sufficient proof exist for violation of the automatic stay. Cash Cloud fails to show any

17   irreparable harm; therefore, the Court should deny the Motion.

18             **a.      Balance of Equities**

19        Cash Cloud argues that the balance of the equities supports the Court issuing a temporary

20   restraining order because Bitcoin Depot "would not be put at risk by the issuance of a temporary

21   restraining order." *See* Motion at 15:13-14.  This argument completely ignores that Cash Cloud

22   has not even met its burden to show that a temporary restraining order is warranted, which alone

23   supports that it would be inequitable for the Court to grant a temporary restraining order in its

24   favor.

25        Therefore, because it would be severely inequitable to Bitcoin Depot if the Court granted

26   a temporary restraining order, the Court should deny the Motion.

27

28

- 11 -

15482-01/132624059_2  1  32624059.2

**b.     Public Interest**

"When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis rather than one that favor[s] in [granting or] denying the preliminary injunction*." Stormans, Inc.*, 586 F.3d at 1138-39 (internal quotation marks omitted).

In deciding whether to grant equitable relief, courts should consider and balance private and public interests whenever public interests are implicated. *Register.com, Inc.*, 356 F.3d at 424. Disputes over private contracts between private parties, like the one here, generally do not imply public interest. *Tiger Century Aircraft,* 2009 WL 3486360 at *3 ("The public interest is not directly implicated in this private party dispute over private contract and business rights.").

Here, there is no persuasive argument that the public interest would be served in granting Cash Cloud's temporary restraining order.   Therefore, the Court should deny Cash Cloud's Motion.

## VI.     CONCLUSION

Based upon the foregoing, Bitcoin Depot respectfully requests that Plaintiff's Motion for Temporary Restraining Order be denied.

DATED this 12th day of April 2023.

**HOLLEY DRIGGS**

   /s /Stacy H. Rubin
Stacy H. Rubin, Esq.
Nevada Bar No. 9298
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101

**CARLTON FIELDS, P.A.**
Adam P. Schwartz, Esq.
(Admitted *Pro Hac Vice*)
John J. Lamoureux, Esq.
(Admitted *Pro Hac Vice*)
Corporate Center Three at International Plaza
4221 W. Boy Scout Boulevard, Suite 1000
Tampa, Florida 33607-5780

*Attorneys for Lux Vending, LLC
d/b/a Bitcoin Depot*

- 12 -

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Holley Driggs and that, on the 12th day of April 2023, I caused to be served a true and correct copy of DEFENDANT LUX VENDING, LLC D/B/A BITCOIN DEPOT'S OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER in the following manner:

☒    (ELECTRONIC SERVICE)    Under Local Rule 5005 of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

☐    (UNITED STATES MAIL)    By depositing a copy of the above-referenced document for mailing in the United States Mail, first-class postage prepaid, at Las Vegas, Nevada, to the parties listed on the attached service list, at their last known mailing addresses, on the date above written.

☐    (OVERNIGHT COURIER)    By depositing a true and correct copy of the above-referenced document for overnight delivery via Federal Express, at a collection facility maintained for such purpose, addressed to the parties on the attached service list, at their last known delivery address, on the date above written.

☐    (FACSIMILE)    By serving a true and correct copy of the above-referenced document via facsimile, to the facsimile numbers indicated, to those listed on the attached service list, and on the date above written.

 /s/ Olivia Swibies
An employee of Holley Driggs

15482-01/132624059_2  132624059.2