BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
JEANETTE E. MCPHERSON, ESQ.
Nevada Bar No. 5423
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Tele: (702) 262-6899/Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
       jmcpherson@foxrothschild.com
       nkoffroth@foxrothschild.com
       zwilliams@foxrothschild.com

JAMES J. JIMMERSON, ESQ.
Nevada Bar No. 000264
JAMES M. JIMMERSON, ESQ.
Nevada Bar No. 12599
**THE JIMMERSON LAW FIRM, P.C.**
415 South 6th Street, Suite 100
Las Vegas, Nevada 89101
Telephone:    (702) 388-7171
Facsimile:    (702) 380-6413
Email: jimmerson@jimmersonlawfirm.com
       jmj@jimmersonlawfirm.com
*Counsel for Debtor Cash Cloud Inc.*

Electronically Filed April 17, 2023

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>　　CASH CLOUD, INC.,<br>　　　dba COIN CLOUD,<br><br>　　　　　　　　　　Debtor. | Case No. BK- 23-10423-mkn<br><br>Chapter 11 |
| CASH CLOUD, INC., dba COIN CLOUD,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>Lux Vending, LLC d/b/a Bitcoin Depot,<br><br>　　　　　　　　　　Defendant. | Adv. Case No. 23-01015-MKN<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date: April 20, 2023<br>Hearing Time: 10:30 a.m. |

1

Cash Cloud, Inc. d/b/a Coin Cloud ("Cash Cloud," "Plaintiff," or "Debtor"), debtor and debtor-in-possession in the above-captioned Chapter 11 case (the "Chapter 11 Case"), by and through its undersigned counsel, Fox Rothschild LLP, and The Jimmerson Law Firm, P.C., hereby files this Reply In Support of Its Motion for Preliminary Injunction (the "Reply"). This Reply is based upon the pleadings in this action, the following memorandum of points and authorities, and any arguments made by counsel during any hearing on the Cash Cloud's Motion for Preliminary Injunction (the "Motion").

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Plaintiff and Debtor, Cash Cloud Inc., respectfully asks this Court to enjoin Defendant Lux Vending, LLC d/b/a Bitcoin Depot ("Defendant" or "Bitcoin Depot") from violating the automatic stay and from tortiously interfering with Cash Cloud's contractual relationships by soliciting Cash Cloud's hosts (through the use of false statements or otherwise). As detailed in the initial moving papers, Cash Cloud is a business that provides the general public the means to buy and sell digital currency (e.g., Bitcoin and other cryptocurrencies) using ATM-style digital currency kiosks. Cash Cloud operates thousands of kiosks throughout the United States and Brazil, installed in some of the largest convenience and grocery store chains as well as prestigious malls.

Since the filing of the bankruptcy petition on February 7, 2023, Defendant (a direct competitor to Cash Cloud) has been improperly attempting to take over Cash Cloud's host locations—host locations where Cash Cloud has **exclusive** rights to operate digital currency kiosks as provided in its host contracts. *See* McAlary Decl. at ¶ 11. Indeed, on February 8, 2023, the day after the bankruptcy petition was filed, Defendant began contacting Cash Cloud's hosts in an effort to persuade them to switch from Cash Cloud to Defendant. *See* Exhibit 3.[1] In these communications, Defendant made several materially false statements concerning Cash Cloud. This effort by Defendant has not ceased. As recently as March 10, 2023, Defendant has continued to contact Cash Cloud's hosts, making even more false statements to them. *See* Exhibits 5, 6. By way of example only, Defendant has made the following false statements to Cash Cloud's exclusive hosts:

---

[1] The exhibits cited to herein are the exhibits filed along with the initial moving papers.

2

144763867.1

- Cash Cloud "was unable to reorganize its debts." Exhibit 3.
- Cash Cloud "is out of business." Exhibit 4.
- Defendant "wanted to replace Cash Cloud's machines with [Defendant's] and take over the rent agreement." *Id.*
- "[Cash Cloud's] machines [are] online, but customers not receiving their crypto." Exhibit 5.
- "[Cash] Cloud [is] being completely unresponsive to the host after not being paid for months." *Id*.
- They [Cash Cloud] stated they will resume payments, do it for a month or two, and then stop paying the retailers again. *Id*.

These statements are false and dangerous to Cash Cloud's business, its reputation and goodwill. As explained by Cash Cloud's CEO, Christopher McAlary, a host who believes Defendant's false statements may switch to Bitcoin Depot fearing (1) a potential dispute with a customer who may not receive the cryptocurrency he/she purchased; (2) a non-responsive kiosk operator; and/or (3) that Cash Cloud would stop making host payments in the near future. McAlary Decl. at ¶ 22. Indeed, the false statement about customers not receiving the digital currency they purchased is particularly harmful to Cash Cloud as it not only puts Cash Cloud's host relationships at risk, but also puts end-user relationships and Cash Cloud's goodwill at risk. *Id*. at ¶ 23. Cash Cloud has invested substantial time and resources in building and cultivating its relationships with its hosts, the value of which cannot be reduced to a dollar figure and the loss of which would represent irreparable harm to Cash Cloud. *Id*. at ¶ 26. In an effort to avoid such irreparable harm, Cash Cloud has brought the Motion seeking injunctive relief.

While Defendant opposes the Motion, it does not oppose the Motion for the reasons that the Court might expect.

In the Opposition,[2] Defendant does not deny any of its aforementioned conduct. Defendant does not dispute that it made the statements to Cash Cloud's hosts after the filing of the bankruptcy

---

[2] Defendant Lux Vending, LLC d/b/a Bitcoin Depot's Opposition to Plaintiff's Motion for Preliminary Injunction (the "Opposition") is cited to herein as "Opp. at __."

3

144763867.1

petition. Defendant does not dispute that the statements made to Cash Cloud's hosts are false. Most importantly, Defendant does not tell this Court that it will stop soliciting Cash Cloud's exclusive hosts (or otherwise making false statements to them) while the bankruptcy is pending. In fact, Defendant characterizes its behavior as "ordinary course commercial conduct." Opp. at 11.

Defendant asks this Court to deny the Motion, claiming that "Cash Cloud fails to identify any specific Host Agreement that Bitcoin Depot actually disrupted." Opp. at 7. Notwithstanding that Cash Cloud supplied evidence that there has been disruption of host relationships by Bitcoin Depot (including post-petition host contract terminations) (*see* McAlary Decl. at ¶¶ 25, 28), even if Defendant "has not converted a single Cash Cloud host to switch from Cash Cloud to Bitcoin Depot" as Defendant claims (*see* Buchanan Decl. at ¶ 6), that is hardly a defense to the Motion. What Defendant is telling this Court is effectively as follows: "This Court cannot enjoin us from soliciting and/or making false statements to Cash Cloud's exclusive hosts because the false statements haven't worked yet and we have not been successful in getting a Cash Cloud host to switch from Cash Cloud to us."

Nonsense.

That Defendant argues that it has not yet been successful in its improper efforts is not a license to continue to tortiously interfere with Cash Cloud's exclusive host contracts and to violate the automatic bankruptcy stay. Indeed, as stated by the Ninth Circuit in *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1288 (9th Cir. 2013), "Requiring a showing of actual injury would defeat the purpose of the preliminary injunction, which is to prevent an injury from occurring." *Id*. (affirming preliminary injunction). For this reason, Defendant's arguments concerning an alleged absence of damages should be rejected and the Motion should be granted.

Defendant's only other principal argument in its Opposition is its claim that making the false statements to Cash Cloud's hosts does not violate the automatic bankruptcy stay, citing to *In re Windstream Holdings, Inc.*, No. 21-cv-4552 (CS), 2022 WL 5245633, at *8 (S.D.N.Y. Oct. 6, 2022). *See* Opp. at 10. Defendant is in error. What Defendant conspicuously leaves out of the Opposition is the *Windstream* court's repeated consideration of whether or not the contracts at issue were exclusive. As detailed below, the court in *In re Windstream* held that where the customer contracts

4

144763867.1

in question did not have exclusivity provisions, the effort to poach customers was not a violation of the automatic stay. By contrast, the *Windstream* court expressly acknowledged and cited authority supporting the contention that interference with a debtor's exclusive contracts is a violation of the bankruptcy stay. *Id*. at *8 (citing *In re Golden Distribs., Ltd.*, 122 B.R. 15, 20 (Bankr. S.D.N.Y. 1990)). Because the host contracts that Defendant is looking to "take over" are exclusive contracts, interference with the same is a violation of the automatic bankruptcy stay. *Id*.; *see also In re Sherlock Homes of W.N.Y, Inc.*, 246 B.R. 19, 24-26 (Bankr. W.D.N.Y. 2000). Accordingly, there is a substantial likelihood that Cash Cloud will succeed on the merits of its claim for violation of the automatic bankruptcy stay and the Motion should be granted.

Knowing that there is no real defense to its behavior, Defendant's Opposition does not substantively address any of its post-petition conduct at issue in the Motion. Indeed, despite dedicating almost a third of its responsive brief to the section entitled, "Relevant Facts," nowhere in that section does Defendant mention any of the communications which form the basis of the Motion, let alone substantively address them. By contrast, Defendant spends the bulk of this section discussing the October 4, 2022 decision from the court in Canada in a mistaken effort to deflect from the issues presently before this Court and otherwise cast aspersions on Cash Cloud. *See* Opp. at 4-5. In fact, rather than explain how the October 4, 2022 decision relates to its post-petition conduct from February 8, 2023 going forward, Defendant purports to provide a description of the Canadian court's order which denied the application for a preliminary injunction to require BitAccess to reactivate the software used to operate Cash Cloud's kiosks. In a transparent effort to criticize Cash Cloud, Defendant concludes this discussion with the statement, "Remarkably, Plaintiff fails to provide any of this detail in its Complaint and Motion," as if such detail were necessary for the Motion. Opp. at 5.

While Defendant certainly provided a self-serving description of the Canadian court's order from October 4, 2022, what is noticeably absent from Defendant's discussion of the October 4, 2022 order is the reason the Canadian court denied the application. One suspects that this information is missing from the Opposition because the Canadian court found the that the application was substantively meritorious. However, because of a procedural issue, the Canadian court denied the

144763867.1

application for injunctive relief. Indeed, the court stated, "If Cash Cloud had provided the undertaking under Rule 40.03, I would have ordered a time restricted injunction for sixty (60) days from the date of this decision." *See* Defendant's Exhibit A at ¶ 61. Remarkably, but perhaps not unexpectedly, Defendant fails to provide this critical detail in its Opposition.

Defendant's efforts to solicit Cash Cloud's hosts and to make false statements about Cash Cloud to its exclusive hosts are tortious and constitute a violation of the automatic bankruptcy stay. The Court should grant the Motion and issue a preliminary injunction against Defendant.

**II.  THE COURT SHOULD ISSUE THE REQUESTED PRELIMINARY INJUNCTION**

    **A.  <u>Cash Cloud Has Established A Likelihood of Success on the Merits of the Claim for Violation of the Automatic Stay</u>**

In working to have Cash Cloud's hosts switch from hosting Cash Cloud's kiosk to hosting Defendant's kiosks, Defendant is violating the automatic stay as such conduct constitutes an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" § 362(a)(3).

In its Opposition, Defendant does not dispute (and therefore concedes) that Cash Cloud's executory contracts with its hosts (which contain, *inter alia*, exclusivity provisions in favor of Cash Cloud), constitute property of the estate which is protected by the automatic stay. *See*, *e.g.*, *In re Lehman Bros. Holdings Inc.*, 544 B.R. 16, 40 (Bankr. S.D.N.Y. 2015) ("A debtor's security interest in collateral or a debtor's interest in an executory contract as of the commencement of the case comprises property of the estate."); *In re Family Health Services, Inc.*, 105 B.R. 937, 942-43 (Bankr. C.D. Cal. 1989) ("the debtor's good will and its contracts with subscribers and members are so essential to the survival of the debtor that they constitute property of the estate as that term is defined in Bankruptcy Code section 541(a)(1)").

Rather, Defendant argues in its Opposition that "[i]nfluencing a customer to opt for a competitor's services over a debtor's service through advertisements, false or otherwise, is not an act of control over the bankruptcy estate's property," citing to *In re Windstream Holdings, Inc.*, 2022 WL 5245633, at *7-9 (S.D.N.Y. Oct. 6, 2022). *See* Opp. at 10. Notwithstanding that Defendant's actions at issue do not constitute "advertising," Defendant's reliance on *Windstream* is misguided.

6

144763867.1

The critical distinction between the debtor in *Windstream* and Cash Cloud is that Cash Cloud's contracts with its hosts contain exclusivity provisions which prohibit the host from using any cryptocurrency kiosk provider other than Cash Cloud. *See* McAlary Decl. at ¶ 11. That the contracts are exclusive to Cash Cloud is dispositive to this issue as Defendant's attempts to interfere with such exclusive contracts constitutes a violation of the automatic stay. Indeed, the court in *Windstream* made multiple references to the importance of exclusive contracts in deciding whether the automatic stay had been violated, stating as follows:

> Rather, absent a contract that bound the customers to purchase **exclusively** from the debtor or required those customers to purchase specific quantities of products, the former employees did not breach the stay by competing for those customers (citing *In re Golden Distribs., Ltd.*, 122 B.R. 15, 20 (Bankr. S.D.N.Y. 1990))…
>
> These acts, through which the competitor actively sought to convert or override **exclusive** term contracts between debtors and their customers, by using the debtors' customer list and holding itself out as the proper and authorized servicer of those accounts, are properly characterized as attempts to exercise control (citing *In re Alert Holdings*, 148 B.R. 194, 198 (Bankr. S.D.N.Y. 1992)).

*In re Windstream Holdings, Inc.*, 2022 WL 5245633, at *8.

Understanding the importance of the exclusive nature of Cash Cloud's host contracts, in its initial Motion, Cash Cloud cited to *In re Sherlock Homes of W.N.Y, Inc.*, 246 B.R. 19, 24-26 (Bankr. W.D.N.Y. 2000)—a case in which the court found that the interference with exclusive contract rights constituted a violation of the automatic bankruptcy stay. *See id*. at 26 ("With respect to liability under the second cause of action for post-petition interference with contract rights and the fourth causes of action for violation of the automatic bankrupcty stay, the court will grant summary judgment to the trustee as against each of the defendants…"). Tellingly, just as Defendant does not acknowledge the language in *Windstream* which holds that interference with exclusive contracts constitutes a violation of the bankruptcy stay, Defendant does not address or otherwise mention the *Sherlock Holmes* decision in its Opposition. Because Defendant is actively interfering with Cash Cloud's exclusive contracts, the Court should find that Cash Cloud has established a likelihood of success on its claim for violation of the automatic bankruptcy stay.

144763867.1

### B. Cash Cloud Has Established A Likelihood of Success on the Merits of the Claim for Tortious Interference With Contractual Relations

In an action for intentional interference with contractual relations, a plaintiff must establish: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage. *See WMCV Phase 3, LLC v. Shushok & McCoy, Inc.*, 750 F. Supp. 2d 1180, 1195 (D. Nev. 2010) (citing *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274, 71 P.3d 1264, 1267 (2003)). Defendant does not dispute that Cash Cloud has established the first three elements of the claim: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; and (3) intentional acts intended or designed to disrupt the contractual relationship. This concession is critical as the principal inquiry is whether the plaintiff proved that defendant intentionally acted to disrupt the plaintiff's contractual relationships. As stated in *Gonzales v. Shotgun Nevada Investments, LLC*, 2:13-cv-00931-RCJ, 2014 WL 936737, at *4 (D. Nev. Mar. 10, 2014), "At the heart of an intentional interference action is whether Plaintiff has proved intentional acts by Defendant intended or designed to disrupt Plaintiff's contractual relations...." *Id*. As detailed below, Defendant's concession of this element is nigh dispositive for the purposes of deciding the Motion.

Defendant only disputes the "actual disruption of the contact" and resulting damages elements of the claim. *See* Opp. at 7-8. Defendant claims that it has not caused any of Cash Cloud's hosts to switch from Cash Cloud to Defendant. *Id*. By contrast, Mr. McAlary has testified that there have been disrupted/terminated contracts by Cash Cloud's hosts and that based upon the information to date, these terminations were induced by Defendant. *See* McAlary Decl. at ¶¶ 25, 28.

This dispute of fact between the parties is of no assistance to Defendant. Indeed, where there exist serious factual disputes as to the merits, injunctive relief is appropriate to preserve the status quo. The Court in *SFR Investments Pool 1, LLC v. PHH Mortgage Corp.*, No. 2:22-cv-00507RFBEJY, 2022 WL 1288751, at *1 (D. Nev. Apr. 29, 2022) held the same, explaining:

> **The Court finds that there are unresolved factual disputes, which raise serious questions going to the merits of this case**. Specifically, the Court finds that the timing as to when the underlying note became wholly due pursuant to its own terms could be dispositive as to the respective positions of each party. The determination of this factual dispute as well as the dispute regarding the deceleration of the note cannot be resolved upon the current

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

144763867.1

record before the Court. **Until these issues are resolved, the Court finds that it must issue an injunction to preserve the status quo**.

*Id*. (emphasis supplied).

Moreover, for the purposes of granting injunctive relief, actual damages are not necessary before the Court may issue a preliminary injunction. As stated above, "[r]equiring a showing of actual injury would defeat the purpose of the preliminary injunction, which is to prevent an injury from occurring." *Shell Offshore*, 709 F.3d at 1288.

This is why Defendant's concession that it acted intentionally with the purpose of causing disruption of Cash Cloud's host contracts is significant—the Court need not wait for formal breach of a host contract in order to enjoin tortious interference. For example, in *Fleetwash, Inc. v. Hall*, No. 3:17-cv-00170-MMD-VPC, 2017 WL 2193239, at *1 (D. Nev. May 18, 2017), the court enjoined the defendants from making false statements designed to interfere with the plaintiff's contracts, holding:

> Hall made false statements intending to interfere with Plaintiff's contracts with customers and prospective business, which has harmed Plaintiff's relationships with its customers. Mr. Carlton's testimony demonstrated that Hall engaged in intentional conduct designed to interfere with Plaintiff's contracts and business. Absent preliminary relief, Defendants' conduct will result in irreparable harm to Plaintiff in the form of losing customers and reputational harm that monetary damage alone cannot address if MTW is allowed to benefit.

*Id*.

As such, notwithstanding the dispute over whether a Cash Cloud host has already switched to Defendant, the Court should issue a preliminary injunction to prevent Defendant from continuing to act improperly and in violation of the automatic stay to prevent further erosion of Cash Cloud's goodwill, reputation, and customer/host relationships.

C. **Cash Cloud Is Likely to Be Irreparably Harmed Unless a Preliminary Injunction is Issued.**

Cash Cloud's contractual relationships with its hosts are essential to its business as they establish the right for Cash Cloud to operate its kiosks at each of its locations. *See* McAlary Decl. at ¶ 6. Demonstrating the importance of these contracts is Cash Cloud's repeated negotiation for the exclusive right to operate the kiosks. *Id*. at ¶ 11. Should Defendant be able to continue its course of conduct in improperly soliciting Cash Cloud's hosts, Cash Cloud will suffer irreparable harm. Cash

144763867.1

1  Cloud has invested substantial time and resources in building and cultivating its relationships with
2  its hosts, the value of which cannot be reduced to a dollar figure and the loss of which would
3  represent irreparable harm to Cash Cloud. *Id*. at ¶ 26. Defendant's false statements concerning Cash
4  Cloud are harmful and dangerous to Cash Cloud's business, its goodwill, and its customer
5  relationships. *Id*. at ¶ 22. Indeed, and by way of example only, Defendant's false statement that
6  Cash Cloud is not sending customers their purchased digital currency is particularly harmful as it not
7  only puts Cash Cloud's host relationships at risk, but also puts end-user relationships and Cash
8  Cloud's goodwill at risk. *Id*. at ¶ 23. Furthermore, Defendant has already caused interruption of the
9  contractual relationship between Cash Cloud and its hosts. *Id*. at ¶25, 28. Based on certain post-
10 petition termination of host contract by certain Cash Cloud host, Defendant has persuaded hosts to
11 switch from hosting Cash Cloud machines to Defendant's machines. *Id*. at ¶ 25.

12      Each of these effects represent irreparable harm for which an injunction should be issued.
13 *See, e.g.*, *Abdou v. Davita, Inc.*, 734 Fed. Appx. 506, 506 (9th Cir. 2018) (affirming preliminary
14 injunction, holding, "[d]amage to a company's goodwill and reputation can constitute irreparable
15 harm because this sort of harm is difficult to measure."); *Fleetwash, Inc.*, 2017 WL 2193239, at *2
16 ("Defendants' conduct will result in irreparable harm to Plaintiff in the form of losing customers and
17 reputational harm that monetary damage alone cannot address if MTW is allowed to benefit.");
18 *INAG, Inc. v. Richar, Inc.*, No. 2:16-cv-722, 2017 WL 4273103, at *5 (D. Nev. September 25, 2017)
19 ("The Court finds that absent an injunction there would be irreparable harm to the professional
20 reputation and prospective professional relationships of Richar, Inc.").

21      In its Opposition, Defendant does not dispute the harmful effects Defendant's statements
22 have had on Cash Cloud's goodwill, reputation, and customer/host relationships. Nor can it. False
23 statements about a party's business operations adversely affect that party's goodwill and justify the
24 issuance of injunctive relief. *See, e.g.*, *Recovery Hous. Acad. LLC v. Candelario*, 562 F. Supp. 3d
25 333, 342 (D. Ariz. 2022) (granting temporary restraining order, stating, "Defendants' false
26 statements in the two emails likely caused damage to the reputation of Plaintiffs' business because
27 it made it sound like it was Plaintiffs' fault that the December event was cancelled.").

28

144763867.1

Instead, in the Opposition, Defendant repeats its problematic claim that Cash Cloud has not demonstrated that a specific host agreement has already been terminated and, without any further analysis, argues that "monetary damages for the alleged contractual interference would be a sufficient remedy." Opp. at 9 n. 6. Defendant is wrong on both accounts.

First, as referenced above, the Court does not have to wait for a breach of contract to occur in order to find that irreparable harm would be caused without the issuance of injunctive relief. The Ninth Circuit's affirmance of the preliminary injunction in *Abdou* confirms the same. There, the Ninth Circuit held:

> Although Abdou/Bacchus did not actually launch a competing entity during the Restricted Period, their discussions with the Restricted Parties clearly were intended to lay the groundwork for such a launch. Allowing them to take advantage of this preparation, which arguably violated the terms of the noncompetes, is likely to cause DaVita precisely the type of irreparable harm that noncompete agreements are intended to prevent.

*Id.*, 734 Fed. Appx. at 507.

Second, the harm done to Cash Cloud's goodwill, reputation, customer and host relationships caused by Defendant's repeated false statements and solicitation of its exclusive hosts is not readily compensable through money damages alone. As explained by Mr. McAlary, Cash Cloud has invested substantial time and resources in building and cultivating its relationships with its hosts, the value of which cannot be reduced to a dollar figure and the loss of which would represent irreparable harm to Cash Cloud. McAlary Decl. at ¶ 26. The prevailing authority supports Mr. McAlary. *See, e.g., Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("intangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm… The district court did not abuse its discretion by finding a possibility of irreparable harm to RAC. The advertising efforts and goodwill that RAC sought to protect are similar to the recruitment efforts and goodwill in *Regents*. The district court focused on these intangible injuries in concluding that RAC's damages would be difficult to valuate and thus constituted possible irreparable harm..."); *Las Vegas Sands Corp. v. Fan Yu Ming*, 360 F. Supp. 3d 1072, 1079 (D. Nev. 2019) ("evidence of loss of goodwill is sufficient"); *Fleetwash, Inc.*, 2017 WL 2193239, at *2; *INAG*, 2017 WL 4273103, at *5. Accordingly, the Court should find that without a preliminary injunction,

11

144763867.1

Cash Cloud is likely to suffer irreparable harm. The Motion should be granted.

**D.    The Balance of Hardships Weighs Heavily in Cash Cloud's Favor.**

Before issuing a preliminary injunction, a court must weigh "the competing claims of injury and … consider the effect on each party of the granting or withholding of the requested relief." *Las Vegas Sands*, 360 F. Supp. 3d at 1081 (quoting *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987)). As explained above, without a preliminary injunction that would prohibit Defendant from continuing to solicit Cash Cloud's hosts (through the use of false statements or otherwise), Cash Cloud loses the benefit of the automatic stay and Cash Cloud's valuable exclusive contracts with its hosts. By contrast, and as stated in the Motion, "Defendant would not be put at risk by the issuance of a preliminary injunction." Mot. at 15. Importantly, Defendant does not dispute that it would not be put at risk by the issuance of a preliminary injunction. As such, the Court should find that the balance of hardships weighs heavily in favor of issuing a preliminary injunction.

**E.    The Public Interest Supports Cash Cloud's Request for Injunctive Relief.**

The fourth factor, the public interest, also supports granting a preliminary injunction. Indeed, the authority is replete with holdings that injunctions designed to prevent interference with contract are in the public interest. *See*, *e.g.*, *Piatelli Co., Inc. v. Chambers*, No. 3:12-cv-225-RCJ-WGC, 2012 WL 1696899, at *5 (D. Nev. May 11, 2012) ("The injunction would also be in the public interest as it enforces contractual rights, prevents interference with contractual relations…"); *Compass Bank v. Hartley*, 430 F. Supp. 2d 973, 983 (D. Ariz. 2006) ("the public interest is served by protecting a company's right to proprietary information, business operations, and contractual rights.").

Similarly, the public interest is implicated where, as here, an injunction is being sought to enforce the automatic bankruptcy stay. In *In re Fabtech Indus., Inc.*, No. ADV.10-01294-BB, 2010 WL 6452908, at *6 (B.A.P. 9th Cir. July 19, 2010), the Ninth Circuit affirmed the bankruptcy court's injunction order, stating, "[t]he public interest in successful reorganization is significant." *Id*. Where, as here, the affected parties would include not just Cash Cloud and the Defendant, but also Cash Cloud's creditors, the public interest factor is not "neutral" as Defendant suggests in the Opposition. *See*, *e.g.*, *In re PTI Holding Corp.*, 346 B.R. 820, 832 (Bankr. D. Nev. 2006) ("When exercising the

144763867.1

formidable power to issue injunctions, a court must always consider the public interest. Here, an injunction raises several public interest issues: the interest in successful reorganizations…"); *In re Lazarus Burman Associates*, 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993) ("the public interest can only be further served by the issuance of an injunction in these proceedings. The public interest, in the context of a bankruptcy proceeding, is in promoting a successful reorganization."). Therefore, this fourth factor supports the issuance of a preliminary injunction.

### F.     The Court Should Overrule Defendant's Hearsay and Foundation Objections

In granting the requested preliminary injunction, the Court should overrule Defendant's perfunctory objections contained in footnote 3 of the Opposition. First, Defendant objects to Exhibit 3 as hearsay. *See* Opp. at 2 n. 3. The objection should be overruled. Exhibit 3, like the other emails attached to the Motion, is an email from Defendant's agent made within the scope of his agency and is thus, not hearsay. Under FRE 801(d)(2)(D), a statement is not hearsay when the "statement is offered against an opposing party and was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." *Id*. In this case, Landon Thomas, Defendant's Director of Business Development, made the statements at issue to Royal Farms while Mr. Thomas was acting within the scope of his agency for Defendant. As such, Exhibit 3 is, by definition, not hearsay. However, to the extent that the Court construes the email as hearsay (which it should not), the Court may consider hearsay evidence in the context of a preliminary injunction, particularly where the need for a quick determination "makes it difficult to obtain affidavits from persons who would be competent to testify at trial." *Flynt Distr. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).

Additionally, Defendant objects that Mr. McAlary does not have personal knowledge that Exhibit 3 is accurate. *See* Opp. at 2 n. 3. Once again, the objection should be overruled as personal knowledge of that email is not required when seeking a preliminary injunction. *See id*. Moreover, Defendant, who would have personal knowledge as to the email's accuracy, has failed to dispute the same with any evidence, competent or otherwise. *See Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) (granting injunctive relief and noting, "[n]o affidavits countering the inference were presented by the [party opposing the requested relief]").

13

Finally, Defendant further objects to four paragraphs within Mr. McAlary's eight-page declaration as they are made "upon information and belief." *See* Opp. at 2 n. 3. This objection should likewise be overruled. As the Court knows, "The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial. Consequently, information and belief declarations may be considered in this context. Thus, such issues properly go to weight rather than admissibility." *BakeMark, LLC v. Navarro*, No. LACV2102499JAKAGPX, 2021 WL 2497934, at *5 (C.D. Cal. Apr. 24, 2021); *Language Line Services, Inc. v. Language Services Associates, LLC*, No. C 10-02605 JW, 2010 WL 2764714, at *4 n. 5 (N.D. Cal. July 13, 2010) (granting a preliminary injunction, holding, "the Court has wide discretion to consider sworn testimony made on information and belief when evaluating a motion for preliminary injunction.").

## III.  CONCLUSION

Based upon the foregoing, Cash Cloud respectfully requests that the Court find that a preliminary injunction is necessary and should be issued to enjoin Defendant from violating the automatic stay by soliciting Cash Cloud's hosts (through the use of false statements or otherwise).

Dated this 17th day of April, 2023.

**FOX ROTHSCHILD LLP**

*/s/ Brett A. Axelrod, Esq.*
BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
JEANETTE E. MCPHERSON, ESQ.
Nevada Bar No. 5423
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135

**THE JIMMERSON LAW FIRM, P.C.**

JAMES J. JIMMERSON, ESQ.
Nevada Bar No. 000264
JAMES M. JIMMERSON, ESQ.
Nevada Bar No. 12599
415 South 6th Street, Suite 100
Las Vegas, Nevada 89101
*Counsel for Debtor Cash Cloud Inc.*

144763867.1