CARLTON FIELDS, P.A.
Adam Schwartz, Esq. (Admitted *Pro Hac Vice*)
Email: aschwartz@carltonfields.com
John J. Lamoureux, Esq. (Admitted *Pro Hac Vice*)
Email: jlamoureux@carltonfields.com
Corporate Center Three at International Plaza
4221 W. Boy Scout Boulevard, Suite 1000
Tampa, Florida 33607-5780
Telephone: (813) 223-7000
Facsimile: (813) 229-4133

HOLLEY DRIGGS
Stacy H. Rubin, Esq. (NV Bar No. 9298)
Email: srubin@nevadafirm.com
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Telephone: (702) 791-0308
Facsimile: (702) 791-1912

*Attorneys for Lux Vending, LLC d/b/a Bitcoin Depot*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>CASH CLOUD, INC., DBA COIN CLOUD,<br><br>Debtor. | Case No. 23-10423-MKN<br>Chapter 11 |
| CASH CLOUD, INC., DBA COIN CLOUD,<br><br>Plaintiff,<br><br>v.<br><br>LUX VENDING, LLC d/b/a BITCOIN DEPOT,<br><br>Defendant. | Adv. No. 23-01015-MKN<br><br>DEFENDANT LUX VENDING, LLC D/B/A BITCOIN DEPOT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT<br><br>Date of Hearing:   May 17, 2023<br>Time of Hearing:   9:30 a.m.<br><br>Judge: Hon. Mike K. Nakagawa |

Defendant Lux Vending, LLC d/b/a Bitcoin Depot ("Bitcoin Depot"), by and through the undersigned counsel, hereby files its Reply to Plaintiff's Response [ECF No. 42] (the "Response")

to Defendant's Motion to Dismiss Plaintiff's Complaint [ECF No. 31][1] ("Motion"). Bitcoin Depot fully incorporates by reference in the following Reply all arguments, facts, and defined terms set forth in its Motion.

This Reply is supported by the Memorandum of Points and Authorities herein; the papers and pleadings on file in this Case, judicial notice of which is respectfully requested pursuant to FED. R. EVID. 201(b) and (c) and 1101(a) and (b); and any oral argument and further evidence the Court entertains at hearing on the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Conclusory statements and lack of actual facts pervade the Complaint and doom its survival. Tellingly, Plaintiff fails to allege the loss of a single contract out of the purportedly thousands of contracts that make up the bankruptcy estate. Each cause of action sounding in fraud suffers from fatal defects—they fail to allege fraud with specificity—and all counts fail to allege a right to relief. For the reasons below, and in the Motion, the Complaint should be dismissed in its entirety.

### II. ARGUMENT

**A.   The Complaint Fails to Allege a Violation of the Automatic Stay.**

Plaintiff argues that

> [i]n working to have Cash Cloud's hosts switch from hosting Cash Cloud's kiosk to hosting [Bitcoin Depot]'s kiosks, [Bitcoin Depot] is violating the automatic stay [because] such conduct constitutes an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

Response at 7. Yet, Plaintiff's argument is squarely opposite the holding of *In re Windstream Holdings, Inc.*, which held that advertising or soliciting by a competitor, without actively seeking to convert or override exclusive contracts between debtors and their customers by misrepresenting the competitor's identity, "cannot reasonably be seen as an act to exercise control over property of

---

[1] All references to "ECF No." are to the numbers assigned to the documents filed in the adversary proceeding identified in the caption above ("Case") as they appear on the docket ("Docket") maintained by the Clerk of the Court of the United States Bankruptcy Court for the District of Nevada. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

- 2 -

15482-01/132881181_3
132881181.4

1  [the debtor]'s estate." *In re Windstream Holdings, Inc.*, 2022 WL 52458633 at *7-9 (S.D.N.Y. Oct. 6, 2022). Plaintiff argues that reliance on *Windstream* is "misguided" because the debtor in *Windstream* did not have exclusive contracts with its customers. Response at 7. But *Windstream*'s holding does not turn on whether the contracts at issue are "exclusive."

The key elements for a stay under 11 U.S.C. § 362(a)(3) are (i) the existence of property of the estate and (ii) the enjoining of all efforts by others to obtain possession or control of property of the estate. *In re Golden Distributors, Ltd.*, 122 B.R. 15, 19 (Bankr. S.D.N.Y. 1990). Whether a contract is exclusive assists in the determination of whether the contract is property of the bankruptcy estate. *Id.* at 20 ("Absent any evidence as to exclusivity agreements between the debtor and its customers or that such customers are required to purchase from the debtor specific quantities of products, the debtor can point to no property interest with respect to its potential customers which can be interfered with….").

The *Windstream* court acknowledged that it could not resolve whether the debtor's contracts, in that case, were part of the bankruptcy estate. *In re Windstream Holdings, Inc.*, 2022 WL 52458633 at *6. Nonetheless, the court held that it "need not resolve [whether the contracts were part of the estate] because … [the] advertisements were not acts to 'obtain' or 'control' any such contracts." *Id.* Thus, *Windstream's* analysis focuses not on exclusive contracts, but rather on whether a defendant's alleged "bad acts" amount to an attempt to obtain possession or control of property of the estate. *Id.* at *7.

Plaintiff's Opposition fails to look beyond the narrow issue of the exclusivity of contracts to the bad acts analyzed by the *Windstream* court. For example, the court reviewed *Alert Holdings, Inc. v. Interstate Protective Services* (*In re Alert Holdings*), 148 B.R. 194 (Bankr. S.D.N.Y. 1992), in which the debtors' competitor violated the automatic stay when it told debtors' accountholders that the debtors were going out of business and that the competitor *had been designated to take over the customers' accounts*, *sent representatives to the customers' homes to switch their services*, *billed* the customers, who began receiving bills from both the debtors and the competitor, and then sent another mailing *telling customers that their contracts with debtors were unenforceable*. *In re Windstream Holdings, Inc.*, 2022 WL 52458633 at *8 (emphasis added) (citing *In re Alert*

- 3 -

15482-01/132881181_3
132881181.4

*Holdings*, 148 B.R. at 197-98). In contrast, the court reviewed *In re Golden Distributors*, which "observed that there was no evidence that the defendants sought to continue the debtor's business so as to acquire the good will that was associated with such business." *Id.* at *8 (citing *In re Golden Distributors*, 122 B.R. 15, 19-20 (Bankr. S.D.N.Y. 1990)). The *Windstream* court found that the defendant's advertisements "were clearly mailings from a competitor" and not attempts to obtain or control the debtor's executory contracts. *Id.* The same is true here. Moreover, the Complaint fails to identify a single kiosk host that switched or even considered switching from Plaintiff to Bitcoin Depot.

Accordingly, because the Complaint fails to allege attempts to obtain or control the debtor's estate, it fails to allege a violation of the automatic stay, and Count II should be dismissed.

**B.     The Complaint Fails to Allege a Violation of the Lanham Act.**

Plaintiff argues that its allegations of false statements necessary for its Lanham Act claim "satisfy the heightened pleading standard from Rule 9(b)." Response at 10:24-25, n.5. Plaintiff further argues, for the first time in its Response, that the purportedly false statements allegedly made by Bitcoin Depot were "sufficiently disseminated" because they were "made to the enterprise host controlling nearly 30% of Plaintiff's contracts going forward." *Id.* at 10. Yet, in keeping with the Complaint's deficient pleading, nowhere in the Complaint does Plaintiff reference any kiosk host controlling almost 30% of its contracts. Plaintiff cannot cure its deficient pleading with new allegations raised for the first time in its opposition to the motion to dismiss. *Korhonen v. Sentinel Ins., Ltd.*, 2014 WL 12789822 at *3 (D. Nev. Mar. 24, 2014) (citing 2 *Moore's Federal Practice*, § 12.34[2] (Matthew Bender 3d ed.) ("The court may not ... take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a)")).

For the reasons identified in the Motion, the Complaint fails to identify either the who, what, when, and how of any "campaign" to "poach" Kiosk hosts, or the factual basis for the belief of any such campaign, and thus fails to meet the particularity requirements of Rule 9(b). Motion at 9-10. Accordingly, Count III should be dismissed.

C. **The Complaint Fails to Allege a Consumer Fraud Claim.**

Plaintiff argues that the Complaint sufficiently sets forth facts establishing its claim for consumer fraud. Response at 11-12. Plaintiff contends that the Complaint sets forth a series of purportedly false statements, which allegedly "disparaged the goods, services, or business of Plaintiff" to Plaintiff's customers and, "as a result," Plaintiff "has been damaged." *Id.* at 11. Plaintiff argues its allegations of causation and damages are not conclusory because the Complaint "specifies that this conduct damaged Plaintiff in specific ways." *Id.* at 11-12.

The Complaint, however, lacks factual support as to the direct harm suffered by Plaintiff. *S. Serv. Corp. v. Excel Bldg. Services, Inc.*, 617 F. Supp. 2d 1097, 1100 (D. Nev. 2007) (holding that Nevada law allows a competitor to sue under the consumer fraud statutes when that competitor can demonstrate it was directly harmed by the defendant's deceptive trade practices). Here, there is no factual support for how any statements created a "loss of reputation and standing in the eyes of the consumer." There is no factual support that any of Plaintiff's customers were improperly lured away, resulting in any of the alleged damages. At most, the Complaint alleges, "upon information and belief, Defendant's misconduct has caused a host to breach the Contract with Cash Cloud." Compl. ¶ 85. But the Complaint fails to support this conclusory allegation with any facts as to any "actual disruption" or "breach." This is not enough to survive dismissal, and Count IV should be dismissed. *See* Motion at 11.

1. **Punitive Damages are Not Available under NRS § 41.600.**

The Nevada Deceptive Trade Practices Act ("NDTPA") only authorizes punitive damages for a deceptive trade practice cause of action under limited circumstances:

> If an elderly person or a person with a disability suffers damage or injury as a result of a deceptive trade practice, he or she or his or her legal representative, if any, may commence a civil action against any person who engaged in the practice to recover ... punitive damages, if appropriate,…

Nev. Rev. Stat. § 598.0977. Similarly, Section 41.600, the general provision providing a private right of action for deceptive practice claims, only provides for "damages," but not punitive damages. *Id.* at § 41.600(3). Moreover, "[a]ny person injured or damaged directly or indirectly in his or her business or property by reason of a violation of the provisions of this chapter may

- 5 -

15482-01/132881181_3
132881181.4

institute a civil action and *shall recover treble damages*, together with reasonable attorney fees and costs." *Id.* at § 598A.210(2) (emphasis added). Accordingly, Plaintiff's request for punitive damages, beyond the mandatory trebling of NRS § 598A.210(2), should be dismissed.

### D. The Complaint Fails to Allege a Claim of Tortious Interference with Contract as to Plaintiff's Host Agreements.

Plaintiff argues that the Motion "gish gallops" through its argument to dismiss Count V. Response at 13:13-14. Although Plaintiff attempts to use an esoteric term to confuse the issue and obscure the Motion's argument, the Response cannot hide the Complaint's speculative and conclusory pleading. *Id.* at 13 (citing Compl. ¶¶ 122-27). The very paragraphs that Plaintiff cites to support its allegations are merely conclusory recitations of the elements of the claims with no factual allegations to support them. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *see also* Compl. ¶¶ 122-27. For example, Plaintiff asserts "Defendant … induc[ed] and/or caus[ed] a breach of those contracts," (Compl. ¶ 126), but offers no factual support that a breach of contract occurred. Without specific allegations of a disruption/breach, the Complaint fails to allege damages beyond mere speculation and fails to state a claim. *See* Motion at 12-13. Accordingly, Count V should be dismissed.

### E. The Court can Take Judicial Notice of the Identified Facts from the Canadian Litigation Order.

Plaintiff argues that the Court cannot take judicial notice of the facts from the Canadian Litigation Order.[2] Response at 16:11-18. Plaintiff does not contend that the facts themselves are subject to reasonable dispute, that their authenticity or accuracy is questionable, or that they are not central to Plaintiff's arguments. Instead, Plaintiff contends that Bitcoin Depot's identification of discrete portions of the Order from the Canadian Litigation constitutes an impermissible attempt to find evidentiary support for [Bitcoin Depot]'s assertions. Response at 2:15-16. However, a

---

[2] Plaintiff contends that Bitcoin Depot "relies upon a … materially incomplete description" of the Order. Response at 15:25-26. It is hard to reconcile any allegation of offering a "materially incomplete" picture of the Order when Bitcoin Depot provided a complete copy of the Order to this Court. *See* Exhibit A to Bitcoin Depot's Request for Judicial Notice [ECF No. 30].

- 6 -

15482-01/132881181_3
132881181.4

proper request for judicial notice includes identifying the specific facts the court is requested to notice. *Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) (advising counsel to the parties to refer to particular facts or statements within the documents to be judicially noticed or identify the fact that the documents contain certain information). Bitcoin Depot's identification of the precise facts for which it requests judicial notice follows the established procedure for such requests. *See id.* (noting that "dumping large swaths of material into a request for judicial notice has become commonplace," but "[t]his catch-all approach to requesting judicial notice … is not consistent with the law's requirements").

Here, it is appropriate to take judicial notice of the referenced contents in the Order that are relevant to the issues presented in the Complaint. *See id.* at 146 (concluding that "it is appropriate to take judicial notice only of the contents in the submitted documents that are relevant to the issues presented in the motion for judgment on the pleadings"). Judicial notice of the Order is intended to provide the Court with a complete picture of the Canadian Litigation, not just the portions cherry-picked by Plaintiff in its Complaint. *Compare* Compl. ¶¶ 48-56, 67-72 *with* Motion at 15:7-18; *also compare* Compl. ¶¶ 42-44 *with* Motion at 14:3-24. This more fulsome picture of the factual allegations within the Complaint related to the circumstances surrounding Plaintiff's access to the BitAccess kiosk software is not an impermissible attempt to factually rebut the Complaint's allegations. Accordingly, judicial notice of the contents of the Order is appropriate.

### F. The Complaint Fails to Allege a Claim for Defamation.

Plaintiff argues that the Complaint establishes a claim for defamation, rather than a claim for business disparagement, since the statements at issue purportedly "attack Plaintiff's reputation and fitness for trade and/or business." Response at 19:14-26. But even under a defamation claim, the Complaint's conclusory allegations fail to allege a cause of action. Plaintiff points to Complaint paragraphs 158 and 159 as proof that Plaintiff sufficiently alleges fault, amounting to at least negligence. *Id.* at 19:11-12. However, similar to other portions of Plaintiff's Complaint, these allegations are merely conclusory recitations of the elements of the claims with no factual allegations to support them. *See Ashcroft*, 556 U.S. at 678 (holding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). The

- 7 -
15482-01/132881181_3
132881181.4

Response points to paragraphs 160 and 161 as sufficiently alleging actual or presumed damages. *Id.* at 19:13. Again, these conclusory allegations fail to provide the requisite factual support. *See Ashcroft*, 556 U.S. at 678. Because Plaintiff's conclusory allegations fail, Count IX should be dismissed.

### III.  CONCLUSION

Based upon the foregoing and the arguments from the Motion, the Court should dismiss all of Plaintiff's claims against Bitcoin Depot, and grant such other relief as the Court deems proper.

DATED this 10th day of May 2023.

**HOLLEY DRIGGS**

 /s/ Stacy H. Rubin
Stacy H. Rubin, Esq.
Nevada Bar No. 9298
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101

**CARLTON FIELDS, P.A.**
Adam P. Schwartz, Esq.
(Admitted *Pro Hac Vice*)
John J. Lamoureux, Esq.
(Admitted *Pro Hac Vice*)
Corporate Center Three at International Plaza
4221 W. Boy Scout Boulevard, Suite 1000
Tampa, Florida 33607-5780

*Attorneys for Lux Vending, LLC d/b/a Bitcoin Depot*

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Holley Driggs and that, on the 10th day of May 2023, I caused to be served a true and correct copy of DEFENDANT LUX VENDING, LLC D/B/A BITCOIN DEPOT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT in the following manner:

☒ (ELECTRONIC SERVICE) Under Local Rule 5005 of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

☐ (UNITED STATES MAIL) By depositing a copy of the above-referenced document for mailing in the United States Mail, first-class postage prepaid, at Las Vegas, Nevada, to the parties listed on the attached service list, at their last known mailing addresses, on the date above written.

☐ (OVERNIGHT COURIER) By depositing a true and correct copy of the above-referenced document for overnight delivery via Federal Express, at a collection facility maintained for such purpose, addressed to the parties on the attached service list, at their last known delivery address, on the date above written.

☐ (FACSIMILE) By serving a true and correct copy of the above-referenced document via facsimile, to the facsimile numbers indicated, to those listed on the attached service list, and on the date above written.

/s/ Olivia Swibies
An employee of Holley Driggs

15482-01/132881181_3
132881181.4